[Crim. No. 2605.   Third Dist.   Feb. 15, 1956.]

THE PEOPLE, Respondent, v. FRANKLIN J. CLINGENPEEL et al., Appellants.

Paul S. Garstang for Appellants.

Edmund G. Brown, Attorney General, and G. A. Strader, Deputy Attorney General, for Respondent.

SCHOTTKY, J.—Appellants husband and wife were accused by information of the crime of burglary, and were found guilty by a jury. Their motions for a new trial were denied and judgment was pronounced against them, Franklin J. Clingenpeel being sentenced to imprisonment in the state

prison and Bonnie Ann Clingenpeel being granted probation. Both have appealed from the order denying their motion for a new trial, and Franklin J. Clingenpeel has appealed from the judgment against him and Bonnie Ann Clingenpeel has appealed from the order granting probation.

The record shows that on June 27, 1954, the residence of Mr. and Mrs. Van Gooden in Pentz, Butte County, California, was broken into and a number of articles taken from the house. These were a 30-30 rifle, approximately $60, consisting mostly of 50-cent pieces from a piggybank, and four pairs of argyle socks. There was also a quantity of gasoline taken from a gasoline tank located outside the house.

At the time that the burglary and theft occurred, Mr. and Mrs. Van Gooden were away and one Tony Kasch was in charge of the premises as caretaker. At approximately 4 p. m. on the day of June 27, Mr. Kasch observed several people leave the premises in an old automobile. He first saw the automobile when he was some 300 or 400 yards away. Upon observing the car, he started walking toward the house. He then heard somebody in the automobile shout and sound the horn. Thereafter he saw two men running from the direction of the front of the house toward the gate in the fence surrounding the house proper. Mr. Kasch temporarily lost sight of these two men when the course of their flight was obscured by other buildings. He then saw the car driving away.

Mr. Kasch then examined the house and noted that the back screen door leading from the outside to a screen porch had been forced open and that there was also a large torn area in the screen of the screen porch. The back door leading from the screen porch to the inside of the house had also been forced open. Mr. and Mrs. Van Gooden also noted the same things upon returning to the house at about 6:30 p. m. of the same day.

The front door of the house which was secured by a spring lock which could be opened from the inside was unlocked and opened.

Later that evening appellants Clingenpeel and a third companion stopped at a hotel and dining room operated by Mrs. Gwinn. Mr. Clingenpeel made some purchases which he paid for with a number of 50-cent pieces. On the early morning of June 28 appellants Clingenpeel stopped at a motel in Chester, California. On this occasion they were also accompanied by a third person. They rented a room for the night

which Mr. Clingenpeel paid for in advance with 15 50-cent pieces. .

On the morning of June 28 at approximately 10 o'clock, appellants Clingenpeel and their male companion stopped at a service station in Chester and purchased gasoline. Mr. Clingenpeel paid for approximately $5.00 worth of gasoline in 50-cent pieces.

The gun which was taken from the Van Gooden residence was discovered by a Mr. Harry Benninger at Butte Meadows. According to the admission of Mr. Clingenpeel, the gun was thrown out of his automobile.

Following their arrest both Mr. and Mrs. Clingenpeel signed a statement admitting that they, in company with one Ray Dillman, stopped at the Van Gooden farm on the afternoon of June 27, 1954, and upon noticing that there was no one at home, decided to steal gasoline from a tank in the yard. After taking the gasoline, Mr. Dillman expressed his intention to break into the house for the purpose of committing theft. According to the testimony of appellant Franklin J. Clingenpeel, he attempted to dissuade Mr. Dillman from entering the house. However, according to their own admissions, the appellants did not leave but acted as lookouts, and when Mrs. Clingenpeel saw Mr. Kasch coming toward the house she shouted to the men and honked the horn. Mr. Clingenpeel and Mr. Dillman then ran from the direction of the house, got into the car and, with Mr. Clingenpeel at the wheel, drove off.

The appellants first contend that the evidence viewed most favorably for the People fails to establish that the appellants were principals in the commission of the crime of burglary and that such evidence at the most shows that they were guilty of the crime of being accessories after the fact to the crime of burglary and the crime of petty theft. Appellants argue that their signed admissions and testimony established that they did not participate in the commission of the burglary but attempted to dissuade Ray Dillman from entering the house and at the most they aided Dillman subsequent to the commission of the offense and were therefore accessories after the fact. Respondent argues that in this case the jury was entitled to disbelieve the testimony of Mr. Clingenpeel that he attempted to dissuade Dillman from entering the house. Respondent argues also that the contrary conclusion is adequately supported by the circumstantial evidence, and

points out that there was testimony that entry into the house had been made by two separate means—a hole had been made in the screen of the back porch and the screen door of the back porch had also been forced open, the logical conclusion being that one person had entered by the hole in the screen while another had forced open the door. There is evidence that Mr. Clingenpeel was seen by Mr. Kasch running from the direction of the front porch toward the gate in the fence surrounding the house. Since the gasoline tank was located outside of this enclosure, there was no necessity for him to be inside the fence at the front door of the house unless he was aiding and abetting in the commission of the burglary. Mrs. Clingenpeel remained in the car and when she observed Mr. Kasch she shouted a warning to the two men and honked the horn. From this it can be inferred that she was willingly and knowingly aiding and abetting in the commission of the burglary as a lookout. Also, there are the circumstances that appellant did not leave the premises when the entry was made, but remained and that they later shared in the fruits. It was Mr. Clingenpeel, not Mr. Dillman, who paid the various bills with 50-cent pieces.

From the foregoing it is clear that there was ample evidence to support the judgment of conviction. While appellants upon this appeal urge the insufficiency of the evidence, the record shows that upon the hearing of appellants' motion for a new trial appellants' counsel stated to the court that the evidence was sufficient to support the conviction.

The principal contention of appellants is that "The court erred in instructing the jury that the crime of accessory after the fact had been abolished."

Appellants contend that such instruction was prejudicially erroneous and permitted the jury to convict them as principals in the crime of burglary upon evidence which showed merely that they were accessories after the fact to such crime.

After the jury retired to deliberate upon their verdict they returned to the courtroom and the record shows the following occurred:

"THE COURT: Do you have a question?

"THE FOREMAN: Yes, we request that we be informed of the degree of burglary of which the people are charged or the exact reading of the wording of burglary or how it is charged. We are trying to define the difference between—if they stole gasoline is that burglary of one degree or did they enter the

house, or were around the house, is that a certain type of burglary. In other words, we want to know what the charge is.

"THE COURT: They are charged with first degree burglary and I have given you the definition of first degree burglary. The question of entering the house of course, is of the essence of a first degree burglary, however, the instructions are—it may be that you are more interested in the instruction as to the aiding and abetting under the California Law. To use the time worn example of the classical bank robbery where someone drives up to a bank, waits in the car, the other person goes in, holds it up, comes out with the swag, they are both guilty of breaking and entering you see. Under the California law the information charges the crime, it is not necessary to charge the business of principal and accessory and that was why the instructions as to maintaining a lookout, as to accessory so forth and so on were in fact given to you. Does that clarify the question. So that you are to view the evidence from the standpoint of all of the instructions. As I say, the charge is first degree burglary. I can read those instructions to you again if you think it is necessary.

"THE FOREMAN: The question came up and it was brought out, that was the subject that was raised, and why the charge was not clear as far as we were concerned.

"THE COURT: The Penal Code is very definite on the matter of charging the crime in the circumstances. There used to be a distinction between accessory before the fact and after the fact and so forth and so on and all of that has been abolished and that may be something that some of you may have been remembering. The question for you to determine of course is, whether or not there was aiding and abetting within the instructions as given you. Now, if you need any of those further instructions, I will be happy to go over them again.

"THE FOREMAN: No, could we have the exhibits and statements?"

Appellants argue that their only defense, which was that they were accessories after the fact and not principals was destroyed by the above-quoted statement of the court that "there used to be a distinction between accessory before the fact and after the fact and so forth and so on and all of that has been abolished and that may be something that some of you may have been remembering."

It is apparent from a reading of the entire proceeding when the jury returned to the courtroom that the jurors desired

some further information as to the nature of the charge and about aiding and abetting. The court then gave them some further instructions which correctly stated what constituted burglary and aiding and abetting. The court then made the statement hereinbefore complained of as to the distinction between accessory before the fact and after the fact being abolished. The court then concluded by stating to the jury: "The question for you to determine, of course, is whether or not there was aiding and abetting within the instructions as given you. Now, if you need any of those further instructions, I will be happy to go over them again," to which the foreman answered in the negative.

The record shows that the jury had previously been fully and correctly instructed as to the nature of the charge, the degrees of burglary as to what constituted aiding and abetting, and that the court also gave the following instruction offered by appellants:

"Cal. Penal Code Sec. 32 provides, every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony. It follows that a person charged as a principal cannot be convicted on the mere proof that he was an accessory. In this particular case both defendants have been charged as principals."

While the statement of the court that the distinction between accessory before the fact and after the fact has been abolished was technically incorrect, we do not believe that, under the circumstances of the instant case, appellants were prejudiced thereby because the court reemphasized the instructions previously given, and in view of the entire record we are satisfied that the verdict of the jury was not affected by what was undoubtedly an inadvertent statement by the court.

From a careful study of the entire record we are convinced that the appellants received a fair trial, that the evidence against them was such that no verdict other than guilty could reasonably be expected, and that no error was committed which resulted in a miscarriage of justice.

The judgment and the orders are affirmed.

Van Dyke, P. J., and Peek, J., concurred.