Filed 10/6/16  P. v. Francis CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>THOMAS CHARLES FRANCIS,<br><br>        Defendant and Appellant. | A144176<br><br>(Contra Costa County<br>Super. Ct. No. 5-140210-6) |

Appellant Thomas Charles Francis was charged with burglary (Pen. Code,[1] §§ 459, 460) of a residence and receiving stolen property (§ 496, subd. (a)).  He entered into a plea bargain through which he was granted three years' probation after pleading no contest to the receiving count, with the burglary charge dismissed.  After his plea, the court held a hearing on restitution and ordered Francis to pay the full amount of the victim's net loss in the burglary.  Francis's sole claim on appeal is that the court erred at the restitution hearing when it excluded evidence to show he was not one of the actual burglars, ruling such evidence was irrelevant.  Francis claims the ruling violated his due process rights.  We disagree and affirm the restitution order.

## I.    BACKGROUND

On the afternoon of July 18, 2013, Robert Bednar's house in Oakley was burglarized.  Bednar determined that several items were missing, including his van, tools, a safe, his sports memorabilia, his daughter's dance bag, multiple computers, and

---

[1] Statutory citations are to the Penal Code unless otherwise indicated.

miscellaneous items. A witness who lived next door to Bednar told the investigating sheriff's deputies she saw two men in front of Bednar's house at 2:00 p.m. on July 18, loading items into a white work van like Bednar's. One had shoulder-length blond hair and appeared to be approximately 30 years old. The other was Hispanic, approximately 26 to 28 years old, with short black hair.

Another neighbor's video surveillance camera captured footage of a purple Nissan Pathfinder with chrome rims entering the court where Bednar lived at 1:41 p.m. and exiting about a minute later. Nine minutes later, Bednar's van exited the court. The next day a sheriff's deputy found a purple Nissan Pathfinder with chrome rims parked in the driveway of Francis's house, within 150 yards of where Bednar's van had been recovered the day before. After checking the address, he learned that Francis was on searchable probation. When contacted, Francis said the purple car belonged to him but was registered to his roommate for insurance reasons; he said he was its only driver. Though Francis's story changed repeatedly, at some point he admitted he had been driving the purple Pathfinder in the vicinity of the burglary the day before.

The purple Pathfinder contained goods stolen from Bednar's house, and upon further investigation, additional stolen items were located in Francis's garage, bedroom and office. Francis claimed an acquaintance named Victor Ayala and two of his friends brought the items to his house the day before in a white van for Francis to sell at the flea market. Francis was to receive 40 percent and Ayala was to receive 60 percent of the sales proceeds. Francis claimed he did not know the items were stolen.

On January 24, 2014, an information was filed charging Francis with one count of residential burglary (§§ 459, 460) and one count of receiving or possessing stolen property (§ 496). On March 20, 2014, Francis pled no contest to receiving stolen property. The burglary count was dismissed as part of a plea agreement. At the change of plea hearing, the court warned Francis there would be "substantial victim restitution" as a result of his plea and said the exact amount would be set at a future hearing. His

2

attorney acknowledged she had seen the amount of the victim's request for restitution.[2] The court waived imposing certain fees at sentencing because of the expected "substantial victim restitution." The court placed Francis on formal probation for three years and ordered him to serve 90 days in county jail.

A restitution hearing was held on September 12, 2014. Bednar testified that his losses from the burglary totaled approximately $40,000. The sheriff's office had returned some recovered property to him (some of which had been damaged), and his remaining losses totaled $23,592. Of that amount, insurance had reimbursed $14,475 for covered items, making his net loss $9,117.

Defense counsel attempted to prove that Francis had not, in fact, committed the burglary and therefore should not be liable for restitution. She presented one witness who had known Francis for five or six years, and who testified that Francis had had short thinning brown hair during that time, evidently to prove Francis did not match the description of either of the burglars seen by the neighbor, an argument upon which Francis still relies. The trial court sustained an objection that the testimony was irrelevant. Defense counsel next said she had other witnesses in support of her theory that Francis had not participated in the burglary and requested a continuance of the hearing for that purpose. After reading excerpts of section 1202.4, subdivision (f), to defense counsel, the trial court made clear its view that such testimony would be inadmissible as irrelevant, explaining, "nothing in [the] Penal Code . . . says that a defendant has to have pled guilty to the exact count that restitution is owing for." The trial court found the evidence "not relevant because your client pled to something related to the burglary," noting that Francis "aided and abetted a residential burglary" and was "in possession of the property stolen from the burglary," so that Bednar was "victimized by Mr. Francis's conduct." The court continued the hearing for additional testimony or argument.

---

[2] Francis had also initialed a waiver and plea form acknowledging that his plea would require him to pay "appropriate restitution" to the victim of his crime.

3

At the continued hearing, defense counsel argued that, in the absence of a *Harvey* waiver,[3] the proposed testimony was relevant. There is no indication in the record she had other witnesses to present, nor that she made an offer of proof as to the substance of any such additional testimony, but she reargued the relevancy of the prior witness's testimony. The court responded, "victims of crime are entitled to have defendants held accountable for . . . the victim's losses that are a result of the defendant's criminal conduct," and "it was very clear on the record that Mr. Francis knew full well he was going to be required to pay victim restitution in this case." Accordingly, the court ordered Francis to pay $9,117 as restitution.

## II.    DISCUSSION

Francis characterizes the issue as follows: "whether a possessor or receiver of stolen property may be precluded from establishing that he was not the thief to mitigate the amount of restitution to be proportioned and assigned to him or whether Due Process (U.S. Const., amend. XIV) is violated by excluding such evidence?" It might more appropriately be phrased: May a defendant who pled guilty to receiving stolen property avoid paying restitution by proving he did not actually commit the burglary in which the property was taken? The answer to the latter question is no, at least where, as here, the burglary and the receipt of stolen property were "transactionally related," which leads us to conclude the court did not err in excluding Francis's evidence as irrelevant.

Article I, section 28, subdivision (b)(13)(A) to (C) of the California Constitution ensures victims the right to receive restitution from criminal defendants: "(A) It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer. [¶] (B) Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss. [¶] (C) All

---

[3] *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

monetary payments, monies, and property collected from any person who has been ordered to make restitution shall be first applied to pay the amounts ordered as restitution to the victim." To implement those provisions, section 1202.4 requires the trial court to order a defendant to pay restitution to the victim "in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) "The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution." (*Id.*, subd. (f)(1).)

At a restitution hearing, the victim bears the initial burden of establishing the loss (*People v. Giordano* (2007) 42 Cal.4th 644, 664 (*Giordano*)) by a preponderance of the evidence (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319 (*Holmberg*)). Once the victim has made a prima facie showing of loss, the burden shifts to the defendant to demonstrate the amount of the loss is different from that claimed. (*People v. Lehman* (2016) 247 Cal.App.4th 795, 801; *People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).) Francis concedes that a court "*may* order restitution based upon dismissed counts." He further concedes that because he was granted probation, a restitution order need only be " 'reasonably related to the crime of which the defendant was convicted or to future criminality.' " (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 (*Carbajal*); see *Giordano*, *supra*, at p. 663, fn. 7.) Thus, courts may exercise discretion in ordering restitution "where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal [citation]." (*Carbajal*, *supra*, at p. 1121.) Courts have broad discretion to protect victims and reimburse them for economic loss. (*In re I.M.* (2005) 125 Cal.App.4th 1195, 1208–1209.) A defendant has a due process right to a fair restitution hearing, but that right is satisfied so long as he or she has an opportunity to respond to matters in the probation report regarding restitution. (*People v. Ryan* (1988) 203 Cal.App.3d 189, 195–196.)

On appeal, we review a restitution award for abuse of discretion. (*Giordano*, *supra*, 42 Cal.4th at p. 663.) The amount of the award must also be supported by substantial evidence. (*Millard*, *supra*, 175 Cal.App.4th at p. 26.) On the other hand,

5

"when the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal." (*People v. Williams* (2010) 184 Cal.App.4th 142, 146; accord, *People v. Brunette* (2011) 194 Cal.App.4th 268, 276–277 (*Brunette*).)

In determining whether the court's ruling on the relevance of the proposed evidence was erroneous, we must look to the underlying law relating to restitution to determine whether it would make a difference to Francis's liability if he could prove he was not one of the burglars. As we shall discuss, even if Francis could prove he was not involved in the burglary, it would not relieve him of liability to make restitution in the full amount of Bednar's losses. Therefore, we conclude the evidence that Francis's counsel sought to introduce was indeed irrelevant and the court did not err in excluding it.

Section 1202.4, subdivision (f)(3) provides that "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." California courts have adopted the "substantial factor" test in analyzing whether a victim's losses "result" from the defendant's conduct. (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396; *Holmberg*, *supra*, 195 Cal.App.4th at p. 1321.) " ' "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." [Citation.] Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation].' " (*Holmberg*, *supra*, at pp. 1321–1322.) To argue, as Francis does, that Bednar's losses were not "the result of the defendant's criminal conduct" (§ 1202.4, subd. (f)(3)) "ignores the fact that there can be more than one cause of injury and that multiple causes can combine to cause harm." (*Holmberg*, *supra*, at p. 1322.)

Francis's argument is similar to one raised in *Holmberg*, *supra*, 195 Cal.App.4th 1310, where a defendant convicted of concealing stolen property (§ 496) argued he was not liable for paying full restitution to the victim of the underlying burglary because he

6

had not been involved in the actual burglary. In *Holmberg*, Stonecrest Financial (Stonecrest)had computer equipment damaged and several computers stolen, along with two credit cards, in a commercial burglary, resulting in a loss of business income. (*Id*. at pp. 1313–1314.) Later that day and the next, Holmberg used the stolen credit cards at several stores, and he appeared in one store's video surveillance using one of the stolen credit cards. Multiple hard drives from the Stonecrest burglary were recovered from Holmberg's home two months later. (*Id*. at pp. 1314, 1317, 1322.) There was evidence that Holmberg fixed some of the stolen computers and sold them on craigslist. (*Id*. at p. 1322.) After Holmberg pled no contest to concealing stolen property, the court ordered him to pay $18,072 in victim restitution, including $10,000 for Stonecrest's lost income while the business was without its computers. (*Id*. at pp. 1315, 1316, 1318.)

On appeal, Holmberg argued he was not subject to a restitution order because his conduct was not a substantial factor in causing the victim's losses. (*Holmberg*, *supra*, 195 Cal.App.4th at p. 1318.) Like Francis, he claimed the losses were due to a burglary of which he was not convicted, and therefore the losses were not caused by his conduct. (*Id*. at pp. 1318, 1320.) Holmberg, unlike Francis, had never been charged with the actual burglary. (*Id*. at p. 1315.) In rejecting his argument, the Sixth District noted there "can be more than one cause of injury and . . . multiple causes can combine to cause harm." (*Id*. at p. 1322.) Because he received and concealed the stolen property, thereby depriving Stonecrest of its use, the defendant's conduct "was a concurrent cause of the victims' losses." (*Ibid*.)

Although Francis now denies he burglarized the victim's home, the evidence in the record, including the probation report upon which the judge relied in setting restitution, supports the conclusion that Francis's conduct was at least a concurrent cause of the victim's losses. Even if Francis could have proven he was not one of the two burglars spotted by the next door neighbor, that would not have proved he was not involved in the burglary. Nothing in the record limits the number of burglars to two and only two. Thus, trying to prove he did not match the description of the burglars, as defense counsel offered to do, could rightly be considered futile and time-wasting.

The fact that the stolen goods were discovered in Francis's home on the very next day after the burglary by itself draws him into the transactional sphere of the actual burglary. (Cf. *Holmberg*, *supra*, 195 Cal.App.4th at p. 1322.) But there is much more in this case. Minutes before the burglary, the distinctive-looking purple Pathfinder entered the court in which Bednar lived and promptly left, with Bednar's stolen van following shortly behind. Francis admitted he had driven his purple Pathfinder near Bednar's residence that day. Items stolen in the burglary were found in Francis's Pathfinder. The inference is practically inescapable that Francis drove the two burglars to Bednar's home, leaving them there to complete the burglary. As the trial court noted, that evidence clearly opened him up to aider and abettor liability. (§ 31; see *People v. Hernandez* (1995) 34 Cal.App.4th 73, 77; *People v. Clingenpeel* (1956) 139 Cal.App.2d 235, 236, 239.) Thus, Francis's conduct was a substantial factor in causing Bednar's losses. Ordering Francis to pay restitution was reasonably related to the crime of which he was convicted. (*Carbajal*, *supra*, 10 Cal.4th at pp. 1123–1124; *People v. Lent* (1975) 15 Cal.3d 481, 486.)

Even assuming for purposes of argument that Francis could have proven he was not involved in the burglary, his non-involvement would not insulate him from liability for victim restitution, since his receipt of the stolen property was a "substantial factor" in causing Bednar's losses. (See *Holmberg*, *supra*, 195 Cal.App.4th at p. 1321.) Our case involves only one burglary and one victim,[4] and Francis's role in accepting possession of the stolen goods is legitimately viewed as a contributing cause of Bednar's losses, regardless of whether he was part of the active burglary team. By entering a no contest plea, Francis admitted he knew the property was stolen when he received and possessed it. (*People v. Vann* (1974) 12 Cal.3d 220, 224; *People v. Kunkin* (1973) 9 Cal.3d 245,

---

[4] By way of contrast, where separate burglaries of different residences with different victims were involved, *People v. Scroggins* (1987) 191 Cal.App.3d 502, 504–506 (*Scroggins*) held a defendant, convicted of receiving stolen property in one crime, could not be required to pay restitution for losses sustained in three other burglaries from other apartments in the same complex, as to which he was never charged or convicted.

8

249 [elements of receiving stolen property include knowledge that the "property had been obtained by theft or extortion"].)  Even if we were to assume Francis had no part in the actual burglary, he no doubt assisted the burglars by providing them with a ready means of disposing of the stolen loot so that they themselves would not be caught in possession of it.  He received and kept Bednar's property, planning to sell it at the flea market (and thereby to profit from Bednar's loss).  For these reasons, we conclude that Francis's receipt of the stolen property was a concurrent cause of, and a substantial factor in, the victim's losses.

But Francis argues that, even if he could be ordered to pay some amount of restitution, he should not have been assessed the full amount of Bednar's losses due to his relatively less culpable participation in the burglary transaction.  To the extent *Scroggins* may be read as requiring a court to take evidence on a defendant's "individual culpability" in contributing to a single victim's losses, and to have restitution apportioned accordingly, we respectfully disagree.[5]  *Millard* held that a trial court, in the context of a deadly motor vehicle accident, *may* use comparative negligence principles in setting an amount of restitution.  (*Millard*, *supra*, 175 Cal.App.4th at p. 13.)  It did not say it *must* apply such principles in all circumstances.  Francis argues in essence that a trial court must fine-tune its restitution order to match closely the defendant's individual degree of culpability in causing the victim's losses.  But the court was not required to indulge Francis's attempt to relitigate the circumstances of the dismissed count so as to determine fine gradations of culpability among the various participants.  Section 1202.4, subdivision (f)(3) specifies that a restitution award must "[t]o the extent possible, . . . be of a dollar

_____

[5] According to *Scroggins*, *supra*, 191 Cal.App.3d at page 508, the right to a restitution hearing includes the right to " ' "a judicial determination of the propriety of restitution to the victim . . . , and of the amount, if any, which the appellant must pay in light of his *individual culpability* and his ability to pay." [Citations. ]' " (Italics added.) *Scroggins* involved multiple victims and multiple crimes.  (See fn. 4, *ante*.)  In addition, *Scroggins* based its conclusion in part on a principle, later repudiated by the Supreme Court in *Carbajal*, that restitution for a dismissed count is not justified if the state of mind required for that count differed from the state of mind required for the admitted count.  (*In re T.C.* (2009) 173 Cal.App.4th 837, 848.)

9

amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." So long as Francis's conduct was a substantial factor in causing Bednar's losses, there was no requirement of a close correlation between the amount of the award and the degree of Francis's individual culpability, nor does the victim's entitlement to restitution turn on the precise role that a specific defendant played in causing his or her losses. "There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*Carbajal*, *supra*, 10 Cal.4th at p. 1121; see also, *In re S.S.* (1995) 37 Cal.App.4th 543, 550.)

Nevertheless, Francis argues the judge was obligated to hear his witnesses because, under the Due Process Clause of the Fourteenth Amendment, a criminal defendant must be afforded a meaningful opportunity to present a complete defense to criminal charges. Francis argues he was denied that opportunity when the court "exclude[d] competent, reliable evidence . . . when such evidence [was] central to the defendant's claim of innocence." (*Crane v. Kentucky* (1986) 476 U.S. 683, 690; but see *Montana v. Egelhoff* (1996) 518 U.S. 37, 53 [*Crane* does not stand for proposition that "all 'competent, reliable evidence' must be admitted"].) Suffice it to say, we are not dealing with Francis's right to respond to criminal charges or the exclusion of evidence "central to [his] claim of innocence." (*Crane, supra,* at p. 690.) In the context of a restitution hearing, a defendant's rights are much more circumscribed. (See *Brunette*, *supra*, 194 Cal.App.4th at p. 284; *Holmberg*, *supra*, 195 Cal.App.4th at p. 1320.) Nor do Francis's cited cases guarantee a defendant a right to present irrelevant evidence.

The evidentiary issue raised in this appeal is similar to one raised in *People v. Weatherton* (2015) 238 Cal.App.4th 676, 681–682 (*Weatherton*), where a defendant who had allegedly shot a woman in the hand was allowed to plead guilty only to two counts of being a previously convicted felon in possession of a firearm, with a *Harvey* waiver on additional dismissed counts, including firearm assault with personal infliction of great bodily injury (§ 245, subd. (a)(2), former § 12022.7, subd. (a)). One of the felon-in-

10

possession counts occurred on the same date as the alleged shooting. (*Weatherton*, *supra*, at p. 679.) Weatherton claimed on appeal he had improperly been denied the opportunity to present evidence at the restitution hearing to prove he did not actually shoot the woman, in violation of due process. (*Id*. at p. 681.) The Court of Appeal rejected that argument, holding the *Harvey* waiver allowed the trial court to consider the facts underlying the alleged shooting in awarding restitution, which amounted to more than $22,000. (*Id.* at p. 680.) "When the Supreme Court allowed that, with the appropriate waiver, a trial court could take account of 'the facts underlying, and . . . pertaining to, the dismissed count[s]' (*Harvey*, *supra*, 25 Cal.3d 754, 758), it was clearly authorizing, because of the defendant's personal acquiescence, a sentencing court to take cognizance of such relevant 'facts' as might be shown from the court record." (*Id*. at p. 683.)

True, *Weatherton* involved a *Harvey* waiver, whereas this case does not, but Francis makes no argument that the distinction is important.[6] The People insist it is not important because *Harvey* itself acknowledged that a sentencing court may consider the facts of dismissed counts that are *transactionally related* to the charges of which the defendant was convicted. (*Harvey*, *supra*, 25 Cal.3d at p. 758.) In *Harvey*, the Supreme Court held it was improper for a trial court to enhance or aggravate a defendant's sentence based on facts underlying a count that was dismissed under a plea agreement (§ 1192.3), but limited this rule to facts that were not "transactionally related" to the count or counts to which the defendant had entered his guilty plea. (*Harvey*, *supra*, at p. 758, italics omitted.) An offense may be considered transactionally related when it circumstantially relates to the admitted offense. (*Id*. at pp. 758–759; *People v. Beagle* (2004) 125 Cal.App.4th 415, 421 [dismissed count is transactionally related if "some action of the defendant giving rise to the dismissed count was also involved in the admitted count"].) Thus, it is only when the court wishes to consider dismissed counts that are *not* transactionally related to the count of conviction that a *Harvey* waiver is

---

[6] Francis refers to the lack of a *Harvey* waiver only once and with reference to the wrong "*Harvey*" case, citing *People v. Harvey* (1984) 163 Cal.App.3d 90, 112.

11

necessary. (*People v. Martin* (2010) 51 Cal.4th 75, 77, 82 [probation conditions may be based on dismissed counts that are transactionally related to the counts of conviction].) For reasons already stated, the burglary of Bednar's home was transactionally related to Francis's receiving conviction.

Francis also argues the restitution order cannot stand because saddling him with the full burden of paying for Bednar's losses, despite his less culpable role in the burglary, fails to promote the goal of rehabilitation. On the contrary, the Supreme Court has recognized that restitution is reasonably related to preventing future criminality. (*Carbajal*, *supra*, 10 Cal.4th at p. 1123.) Moreover, the main purpose of the state constitutional requirement of restitution is to make the victim whole, with the defendant's rehabilitation being but a "secondary" purpose. (*Millard*, *supra*, 175 Cal.App.4th at pp. 35–36; see *People v. Anderson* (2010) 50 Cal.4th 19, 27 [acknowledging both purposes].) There is no requirement that the court consider comparative fault in setting a restitution award. (Cf. *Brunette*, *supra*, 194 Cal.App.4th at pp. 284–286 [no requirement to employ comparative fault principles in setting restitution award under section 597, subd. (f)(1)].) And under *Carbajal* and *Lent*, the probation condition need not even be reasonably related to Francis's future criminality so long as it is reasonably related to the crime of which he was convicted. (*Carbajal*, *supra*, 10 Cal.4th at pp. 1123–1124; *Lent*, *supra*, 15 Cal.3d at p. 486.)

The court did not err in imposing full restitution on Francis, regardless of what specific role he played in causing Bednar's losses. And there was no error, constitutional or otherwise, in excluding Francis's proffered evidence, which truly was irrelevant.

## III. DISPOSITION

The restitution order is affirmed.

_____

Streeter, J.

We concur:

_____

Ruvolo, P.J.

_____

Reardon, J.

A144176/*People v. Francis*

13