Filed 10/16/20  P. v. Wesley CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>ANDRE MAURICE WESLEY,<br><br>  Defendant and Appellant. | D075313<br><br><br>(Super. Ct. No. SCD269663) |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Michael Pulos, Deputy Attorneys General, for Plaintiff and Respondent.

In this appeal, defendant Andre Maurice Wesley challenges the sentence he received following his conviction on seven counts.  Wesley argues

that the award of victim restitution is not supported by substantial evidence and that the award of fines, fees, and assessments violates his right to due process under our state and federal constitutions.

As we explain, the award of victim restitution is supported by substantial evidence; and by failing to object at the time of sentencing, Wesley forfeited appellate review of the award of fines, fees, and assessments. Accordingly, we will affirm the judgment.

## I. STATEMENT OF THE CASE

The issues on appeal concern the trial court's post-conviction rulings on the victim restitution and the fines, fees, and assessments awarded as part of Wesley's sentence. Thus, there is no need to detail the facts underlying the commission of the crimes and the trial proceedings. To summarize, in November 2016, Wesley kidnapped, attacked, and threatened S.M. to such an extent that, to escape his death threat, she threw herself out of his moving vehicle onto the street. To the extent certain facts or proceedings are necessary to an understanding or disposition of an issue on appeal, we will include them in the discussion of the issue at part II., *post*.

At trial, a jury convicted Wesley of two counts of corporal injury to someone with whom he has a dating relationship (Pen. Code, § 273.5;[1] counts 1 and 6); two counts of false imprisonment (§§ 236 and 237, subd. (a); counts 2 and 5); two counts of criminal threats (§ 422; counts 3 and 7); and one count of kidnaping (§ 207, subd. (a); count 4). The jury also found true certain enhancements for the personal infliction of great bodily injury under section 12022.7, subdivision (e) (counts 1 through 7) and personal use of a dangerous or deadly weapon under section 12022, subdivision (b)(1) (counts 4

---

[1]     Subsequent unidentified statutory references are to the Penal Code.

through 7). In bifurcated proceedings, the jury also found true four prior felony convictions, which the amended information alleged to be a probation denial prior (§ 1203, subd. (e)(4)), first serious felony prior (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and strike priors (§§ 667, subds. (b)-(i), 668, 1170.12).

The trial court sentenced Wesley to 50 years to life, plus 21 years, as follows: 25 years to life for corporal injury (§ 273.5; count 1) with the strike priors (§§ 667, subds. (b)-(i), 668, 1170.12); 25 years to life for kidnaping (§ 207, subd. (a); count 4) with the strike priors (§§ 667, subds. (b)-(i), 668, 1170.12); 10 years for the serious felony prior (§§ 667, subd. (a)(1), 668, 1192.7, subd. (a); five years each for corporal injury and kidnapping, counts 1 and 4); 10 years for the great bodily injury enhancement (§ 12022.7, subd. (a); five years each for corporal injury and kidnapping, counts 1 and 4); and one year for the use of the deadly weapon enhancement for kidnapping (§ 12022, subd. (b)(1); count 4). The court stayed the sentences and enhancements on the remaining the counts pursuant to section 654.

As part of Wesley's sentence, the court additionally ordered Wesley to pay: a $56,960 victim restitution award to S.M. (§ 1202.4, subd. (f)); a $10,000 restitution fine (§ 1202.4, subd. (b)); a $280 court operations assessment (§ 1465.8); a $210 criminal conviction assessment (Gov. Code, § 70373); and a $154 criminal justice administration fee (Gov. Code, § 29550.2).[2]

---

[2] The court also awarded restitution in the amount of $162 payable to the Victim Compensation Program. (Former § 1202.4, subd. (f); Stats. 2016, ch. 31, § 240, eff. June 27, 2016.) Wesley raises no issue on appeal as to the $162.

Wesley timely appealed from the judgment. The court later filed an amended judgment, correcting a clerical (addition) error.

## II. DISCUSSION

Wesley raises two arguments on appeal: (1) whether the court's award of $56,960 in victim restitution is supported by substantial evidence; and (2) whether the court's award of the $10,000 restitution fine, the $280 court operations assessment, the $210 criminal conviction assessment, and the $154 criminal justice administration fee (together, Fines, Fees, and Assessments) violates his due process rights. As we explain, Wesley did not meet his burden of establishing reversible error.

A. *The Award of $56,960 in Victim Restitution is Supported by Substantial Evidence*

1. *Additional Facts*

After recording the verdicts and discharging the jury, the court set a sentencing hearing for July 27, 2018. In preparation for the hearing, the Probation Department submitted an Adult Services Probation Officer's Report (Probation Report). It does not contain a file stamp, although next to the probation officer's signature is a stamp that reads: "DELIVERED HOJ [¶] JUL 16 2018 [¶] Adult Filed Services Probation Department." In part, the Probation Report recommends that Wesley pay: "Restitution per [section ]1202.4[, subdivision ](f) . . . to [S.M.] in an amount to be determined, subject to modification by the court."[3]

---

[3] We apply the version of the restitution law that was in effect on the date of the defendant's crime. (*People v. Birkett* (1999) 21 Cal.4th 226, 228, fn. 1, 232, 247 & fn. 21 [former § 1203.04]; *People v. Martinez* (2014) 226 Cal.App.4th 1169, 1189-1190 [former § 1202.4].)

At the time of the offense here in November 2016, section 1202.4, subdivision (f) provided in part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall

On the date of the scheduled sentencing hearing (July 27, 2018), a one-page document entitled "Victim Restitution Update" was filed. It provides in full (below the names of Wesley and S.M. and the case no.):

> "[S.M.] has been unable to return to work (in security) since the offense occurred. She is afraid to be around large crowds, especially with men. She was working full time (40 hours per [week]) and making $16 per hour. She is requesting restitution for her loss wages since then.
>
> "2016- 7 weeks
>
> "2017- 52 weeks
>
> "2018- 30 weeks
>
> "$16 hour x 40 hours/ week = $640 per week
>
> "89 weeks x $640/week = $56,960
>
> "**Total request: $56,960**"

The sentencing hearing was continued a number of times. On the day before the January 23, 2019 hearing, the People filed a sentencing statement

---

require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . *The court shall order full restitution* unless it finds compelling and extraordinary reasons for not doing so and states them on the record. . . . [¶] . . . [¶] (3) To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (E) *Wages . . . lost by the victim . . . .*" (Stats. 2016, ch. 31, § 240, eff. June 27, 2016; italics added.)

(Jan. 22, 2019), and in the clerk's transcript a filed-stamped copy of the July 27, 2108 Victim Restitution Update follows.[4]

At the sentencing hearing, after listening to S.M.'s victim statement under Marsy's Law (see Cal. Const., art. I, § 28), the following exchange took place:

> "THE COURT:  [Y]ou gave us a list of economic difficulties you've had because of this.  Is that list accurate . . . ?
>
> "[S.M.]:  Yeah. . . ."

S.M. then continued with and concluded her victim's statement.  In response to the court's inquiry, both the People and Wesley provided input based on S.M.'s comments.  As pertinent to the issue on appeal, this input included the following:

> "[THE PROSECUTOR]:  I will say that I have been in touch with this victim . . . .  She has made it crystal clear to me when I speak with her that this incident, this case haunts her.  It's something she thinks about all the time. . . .  [¶] . . . [¶] But yes, I do want to reiterate that [S.M.] has consistently been very traumatized from this incident. . . .
>
> "[THE COURT]:  Very good.  [Defense counsel], . . . is there anything you think [S.M.] ought to bring up that she hasn't brought up?

---

[4]     From the clerk's transcript, we cannot confirm that the July 2018 Victim Restitution Update was attached to the January 2019 sentencing statement.  However, that is a reasonable inference, since:  the transcript contains documents in chronological order; the document immediately prior to the People's sentencing statement was filed on the same date as the sentencing statement, January 22, 2019; and the document immediately after the sentencing statement was filed three days later on January 25, 2019.  In any event, the Victim Restitution Update was before the court at the time of sentencing in January 2019, as indicated in the reporter's transcript, discussed in the text, *post*.

"[DEFENSE COUNSEL]:  I assume that she's not going to be able to work.

"THE COURT:  Pardon me?

"[DEFENSE COUNSEL]:  Have you been able to work since this happened [(Nov. 2016)]?

"[S.M.]:  I just recently — last month [(Dec. 2018)] I just recently got a job, and I just started to get my life back on track.

"[DEFENSE COUNSEL]:  So you're working?

"[S.M.]:  I'm working now, but today — yesterday when I had to let my boss know what's going on, they gave me the rest of the week off because I was just a mess knowing that we were coming back and I have to keep going over this situation, this — nothing's gone away, and, I mean, it's just — like [the prosecutor] said, it just haunts me over."

Immediately following this explanation to defense counsel, the court and S.M. continued:

"THE COURT:  Okay.  Let me ask you a little bit about this victim restitution update.  You came up with a total of $56,960 based on losses in 2016, 2017, and 2018.  Is that accurate?  Are you seeing that?

"[S.M.]:  That's accurate.  Just not being able to do anything . . . ."

At the end of the sentencing hearing, the trial court awarded S.M. $56,960 in victim restitution pursuant to section 1202.4, subdivision (f).

2.    *Law & Analysis*

"In 1982, California voters passed Proposition 8, also known as The Victims' Bill of Rights. . . .  Proposition 8 established the right of crime victims to receive restitution directly 'from the persons convicted of the crimes for losses they suffer.'  (Cal. Const., art. I, § 28, subd. (b).)"  (*People v. Giordano* (2007) 42 Cal.4th 644, 652 [§ 1202.4, subd. (f)] (*Giordano*).)  Proposition 8 was not self-executing, however, and to implement its

7

mandates, the Legislature " 'enacted, and frequently amended, a bewildering array of responsive statutes.' " (*Giordano*, at p. 652; see generally *id.* at pp. 652-654.) One of those statutes is section 1202.4.

Thus, for crimes like Wesley's committed in November 2016, former section 1202.4, subdivision (f) required full mandatory victim restitution where a victim's economic loss, including wages, was caused by a crime for which the defendant was convicted, unless the trial court finds, and states its finding on the record, a compelling and extraordinary reason not to order full restitution. (See fn. 3, *ante*.)

As the parties agree, we review the trial court's section 1202.4, subdivision (f) victim restitution order for an abuse of discretion. (*Giordano*, *supra*, 42 Cal.4th at p. 663; *People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).) " ' " 'Where there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " ' " (*Millard*, at p. 26.) Wesley's challenge here is to the evidence in support of the restitution award; according to Wesley, the award of $56,960 to S.M. for lost wages lacks substantial evidence.

" 'In reviewing the sufficiency of the evidence [to support a factual finding], the " 'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." ' " (*Millard*, *supra*, 175 Cal.App.4th at p. 26.) As particularly applicable here, " ' "[i]f the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding.' " (*Ibid.*) In determining whether a factual finding is supported by substantial evidence, " '[w]e do not reweigh or

reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact.' " (*Ibid*.)

"Restitution hearings are intended to be informal." (*People v. Weatherton* (2015) 238 Cal.App.4th 676, 684 (*Weatherton*).)  In part, that is because " ' " ' "a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution." ' " ' " (*Ibid*.) For example, " ' " '[s]ection 1202.4 does not, by its terms, require any particular kind of proof.' " ' " (*Ibid*.)  Victim restitution is part of a defendant's sentence, and " ' " '[s]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source . . . whence it comes.' " ' " (*People v. Prosser* (2007) 157 Cal.App.4th 682, 692.)

At a victim restitution hearing, the People must make a prima facie case for the amount of the victim's economic loss; and upon such a showing, " 'the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim.' " (*Millard*, *supra*, 175 Cal.App.4th at p. 26.)  For example, not only is " ' " 'the trial court . . . entitled to consider the probation report,' " ' " but " ' " '[w]hen the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount." ' " ' " (*Weatherton*, *supra*, 238 Cal.App.4th at p. 684.)

Under the foregoing standards, we conclude that the trial court's victim restitution award is supported by substantial evidence.

First, the Victim Restitution Update established lost wages of $56,980. Although the update does not state that it was submitted by the probation department, given the timing of the filing (i.e., the day of the originally

9

scheduled sentencing hearing) and the reference to an "update," a reasonable inference is that the probation department submitted the document.[5] Second, at the hearing, S.M. confirmed the accuracy of the $56,960 in lost wages from 2016, 2017, and 2018, *as set forth on the Victim Restitution Update*. Third, the prosecutor explained that, based on her personal observation, S.M. "has consistently been very traumatized from this incident." Finally, as part of Wesley's rebuttal case, defense counsel expressly stated his "assum[ption] that she's not going to be able to work," and received confirmation from S.M. that she had only recently (i.e., Dec. 2018) returned to work since the November 2016 crimes.

Wesley's arguments do not convince us otherwise.

We reject Wesley's suggestion that, because the record lacks "sworn testimony and/or documentary evidence of [lost] income," the victim restitution award lacks substantial evidence. No such formality is required. (*Weatherton*, *supra*, 238 Cal.App.4th at p. 684.) *People v. Harvest* (2000) 84 Cal.App.4th 641 (*Harvest*), on which Wesley relies, is distinguishable. There, the appellate court reversed a $5,500 restitution order to a victim's parent for the victim's burial expenses. (*Id.* at p. 653.) Although the probation report

_____

5    In *Walker v. Appellate Division of the Superior Court* (2017) 14 Cal.App.5th 651, for example, the People attached to their sentencing brief "what appear[ed] to be an email from [the victim's] counsel stating the amount of attorney fees expended in the civil case" that the victim filed to recover economic damages sustained by the victim as a result of the defendant's criminal conduct—an item of economic loss expressly included in section 1202.4, subdivision (f). (*Id.* at p. 659.) Based on that document, the Court of Appeal affirmed the appellate division's conclusion that the email sufficiently established a prima facie case for restitution (*ibid.*), which the defendant did not rebut. Likewise, here, the Victim Restitution Update, a file-conformed copy of which appears to have been attached to the People's sentencing brief, is part of the prima facie case of S.M.'s economic loss.

"mention[ed]" the victim's burial expenses, the record contained no documentation or testimony as to the amount. (*Ibid*.) In contrast, here, the record contains *both* documentation of the loss, including the calculation of the amount, *and* the victim's statement of the accuracy of the loss and the amount.

We also reject Wesley's criticism that the Victim Restitution Update "does not carry the veracity and weight" of documents filed with the Internal Revenue Service or the family court that were presented in cases on which Wesley relies.[6] Wesley emphasizes that the update is not signed, does not indicate its author, and lacks the source of the information provided. Wesley further questions the accuracy of the Victim Restitution Update based on S.M.'s testimony from the trial,[7] arguing that, because "her sworn testimony at trial contradicts the unsigned document that was filed as evidence of her claim, the document is not substantial evidence of her economic loss." In his reply brief on appeal, Wesley is more direct: "Such a direct conflict [between S.M.'s trial testimony and her statements at the sentencing hearing] precludes a finding of substantial evidence." Although these arguments regarding conflicting evidence may have been appropriate at the sentencing hearing—i.e., at a time when the trial court was tasked with weighing

---

[6]    In *Giordano, supra*, 42 Cal.4th 644, previously filed W-2 federal income tax forms were submitted in support of the victim's survivor's economic losses (*id*. at p. 650); and in *Harvest, supra*, 84 Cal.App.4th 641, a child support order was submitted in support of the victim's survivor's economic losses (*id*. at p. 653).

[7]    Wesley relies on what he describes in his opening brief on appeal as "contradictory trial testimony that [S.M.] only worked seasonal jobs, had been unemployed for three to four months and had a job interview at the time of the offense."

conflicting evidence[8]—we do not consider them on appeal. We consider *only* the *evidence in support of the court's ruling* and determine whether it is substantial; we do not consider whether other evidence may have supported a different ruling. (*Millard*, *supra*, 175 Cal.App.4th at p. 26.)

Accordingly, since Wesley has not established that the victim restitution award of $56,960 lacks either a factual or rational basis, Wesley did not meet his burden of establishing that the trial court abused its discretion in making the award.

B.      *Wesley Forfeited Appellate Review of Potential Error Associated With the Fines, Fees, and Assessments*

Relying principally on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Wesley contends that, in imposing the Fines, Fees, and Assessments without first determining whether he had the ability to pay them, the trial court violated his constitutional right to due process. In the alternative, Wesley suggests that, by failing to object in the trial court to the imposition of the Fines, Fees, and Assessments at or before the time of sentencing, trial counsel provided constitutionally deficient assistance. In response, the People present both procedural and substantive arguments, including specifically that, by failing to object in the trial court, Wesley forfeited appellate court consideration of his substantive arguments in the first instance.

As we explain, Wesley forfeited his appellate arguments because he failed to object in the trial court at the time of sentencing. On that basis, without reaching the merits of his substantive arguments, we will conclude that Wesley did not establish that the trial court erred in imposing the Fines,

---

8      In fact, at the sentencing hearing, defense counsel emphasized much of this same conflicting evidence.

Fees, and Assessments. As we further explain, on the present record, Wesley did not establish that his trial attorney rendered constitutionally ineffective assistance in failing to object.

1. *Forfeiture*

Initially and importantly, there is no dispute: At the time of his sentencing hearing, Wesley neither objected to the Fines, Fees, and Assessments nor requested an ability-to-pay hearing.

In *Dueñas*, at the sentencing hearing, the defendant objected to the trial court's imposition of a $30 court facilities assessment (Gov. Code, § 70373), a $40 court operations assessment (§ 1465.8), and a $150 restitution fine (§ 1202.4) on the basis that she was unable to pay them. (*Dueñas, supra*, 30 Cal.App.5th at p. 1162.) In support of her objection and related request to hold an inability-to-pay hearing, the defendant presented evidence that she was a probationer who suffered from cerebral palsy and was indigent, homeless, receiving public assistance, and the mother of young children. (*Ibid.*) The trial court overruled the defendant's objection, ruling that (1) the $30 court facilities assessment and the $40 court operations assessment were both mandatory, regardless of the defendant's inability to pay them, and (2) the defendant had not made the " 'compelling and extraordinary' " showing under section 1202.4, subdivision (c), to justify waiving the $150 restitution fine. (*Dueñas*, at p. 1163.) In particular, the trial court rejected the defendant's constitutional arguments "that due process and equal protection required the court to consider her ability to pay these fines and assessments[.]" (*Ibid.*)

The appellate court reversed. (*Dueñas, supra*, 30 Cal.App.5th 1157.) As potentially applicable in the present appeal, *Dueñas* concluded that, for purposes of the restitution fine, "section 1202.4 bars consideration of a

13

defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum"; however, "the execution of any restitution fine imposed under this statute [(§ 1202.4)] must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, at p. 1164.) For purposes of the assessments, *Dueñas* concluded that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments" under section 1465.8 and Government Code section 70373, respectively. (*Dueñas*, at p. 1164.)

The applicability of *Dueñas* has been the subject of many opinions since its filing last year. However, because we are deciding this appeal on forfeiture grounds, we express no view as to substantive rulings in *Dueñas* or the more recent opinions, except to the extent they provide guidance on the issue of forfeiture.

In *People v. Castellano* (2019) 33 Cal.App.5th 485 (*Castellano*), for example, the appellate court applied *Dueñas* to a defendant who had been assessed various court fees and the statutory minimum restitution fine.[9] (*Id.* at pp. 488-489.) *Castellano* embraced the application of the forfeiture rule, explaining that a defendant *must* "in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court." (*Id.* at p. 490.) However, *in that case*, the court declined to deem the defendant's failure to object to the fine and fees a

---

9    *Castellano, supra*, 33 Cal.App.5th 485, was published less than three months after *Dueñas, supra*, 30 Cal.App.5th 1157, and both opinions are from the same division of the same appellate district.

14

forfeiture because, at the time of the defendant's sentencing, *Dueñas* was "a newly announced constitutional principle that could not reasonably have been anticipated[.]" (*Castellano*, at p. 489; accord, *People v. Belloso* (2019) 42 Cal.App.5th 647, 653-654 [same court as *Dueñas* and *Castellano*]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 138 (*Johnson*) [rejecting a forfeiture; "we are hard-pressed to say [the *Dueñas*] holding was predictable and should have been anticipated"].)

In *People v. Frandsen* (2019) 33 Cal.App.5th 1126 (*Frandsen*), the court took a different approach on forfeiture. There, the trial court imposed the statutory maximum restitution fine under section 1202.4 ($10,000) and various assessments (totaling $120). (*Frandsen*, at p. 1153.) The appellate court rejected the defendant's contention that objections were unnecessary to avoid a forfeiture, expressly disagreeing with *Castellano*'s suggestion that the rulings in *Dueñas* " 'could not reasonably have been anticipated.' " (*Frandsen*, at p. 1154, quoting *Castellano, supra*, 33 Cal.App.5th at p. 489.) As *Frandsen* explains, "*Dueñas* was foreseeable. Dueñas herself foresaw it. . . . [¶] *Dueñas* applied law that was old, not new." (*Frandsen,* at pp. 1154-1155.)

As applicable to the felonies for which Wesley was sentenced, former section 1202.4, subdivision (b) expressly *required* the sentencing court to impose a restitution fine in an amount not less than $300 and not more than $10,000, unless the court found "compelling and extraordinary reasons for not doing so."[10] In the present appeal, as in *Frandsen, supra*, 33 Cal.App.5th

---

[10] In November 2016, at the time Wesley committed the crimes for which he was sentenced, former section 1202.4, subdivision (b) provided: "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record. [¶] (1) The

at page 1154, the trial court imposed a section 1202.4 restitution fine above the minimum. Although former section 1202.4, subdivision (c) provided that a defendant's inability to pay "shall not be considered a compelling and extraordinary reason not to impose a restitution fine" (Stats. 2016, ch. 31, § 240, eff. June 27, 2016), a defendant's inability to pay may be considered " 'in increasing the amount of the restitution fine in excess of the minimum fine' " of $300 (*Frandsen*, at p. 1154). As to this latter standard—which applied to the trial court's imposition of Wesley's $10,000 section 1202.4 restitution fine here—"[*a*] *defendant shall bear the burden of demonstrating his or her inability to pay*."[11] (Former § 1202.4, subd. (d), italics added; Stats. 2016, ch. 31, § 240, eff. June 27, 2016.) For this reason, we agree with the *Frandsen* court's observation and conclusion: "Given that the defendant is in the best position to know whether he has the ability to pay, it is

---

restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than . . . three hundred dollars ($300) starting on January 1, 2014, and not more than ten thousand dollars ($10,000)." (Stats. 2016, ch. 31, § 240, eff. June 27, 2016.)

11    The restitution fines in *Castellano* and *Johnson* were the statutory minimum. (*Castellano*, *supra*, 33 Cal.App.5th at p. 488; *Johnson*, *supra*, 35 Cal.App.5th at p. 138, fn. 5.) Thus, the trial courts in *Castellano* and *Johnson* lacked statutory authorization to consider the respective defendant's inability to pay. (§ 1202.4, subd. (c) ["Inability to pay may be considered *only in increasing* the amount of the restitution fine in excess of the minimum fine"; italics added].) For this reason, neither *Castellano* nor *Johnson* provides guidance on the issue of forfeiture where, as here, the section 1202.4 restitution fine is greater than the statutory minimum.

16

incumbent on him to object to the fine and demonstrate why it should not be imposed." (*Frandsen*, at p. 1154.)[12]

This is not a new concept. More than a decade ago, in *People v. Avila* (2009) 46 Cal.4th 680 (*Avila*), the Supreme Court was faced with a defendant who argued on appeal that the trial court erred by imposing the statutory maximum restitution fine under former section 1202.4 "without considering his ability to pay."[13] (*Avila*, at p. 728.) Our high court ruled that the defendant forfeited his claim of sentencing error by failing to object at the time of judgment. (*Id.* at p. 729 ["Had defendant brought his argument to the court's attention, it could have exercised its discretion and considered defendant's ability to pay, along with other relevant factors, in ascertaining the fine amount."].) "The concept of forfeiture for failure to raise ability to pay fines, fees or assessments is well established in our caselaw" (*People v. Keene* (2019) 43 Cal.App.5th 861, 864 (*Keene*)) and has been followed consistently (*People v. Nelson* (2011) 51 Cal.4th 198, 227 ["defendant forfeited this claim [that the trial court erred by not considering his ability to pay the section 1202.4 restitution fine] by failing to object at his sentencing hearing"]; *People v. Gamache* (2010) 48 Cal.4th 347, 409 [same]; *People v. Trujillo* (2015) 60 Cal.4th 850, 858 [the defendant has the burden "to assert noncompliance with section 1203.1b [fees for costs of probation] in the trial

---

12    Late last year, the Supreme Court granted review as to the following two issues: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments? If so, which party bears the burden of proof regarding defendant's inability to pay?" (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

13    "[F]ormer section 1202.4 contained language regarding a trial court's consideration of the defendant's ability to pay similar to that contained in the current statute." (*Avila, supra,* 46 Cal.4th at p. 729.)

17

court as a prerequisite to challenging the imposition of probation costs on appeal"]; *People v. Aguilar* (2015) 60 Cal.4th 862, 864 ["defendant's failure to challenge the fees in the trial court [for probation costs (§ 1203.1b) and reimbursement of fees paid to appointed counsel (§ 987.8)] precludes him from doing so on appeal"]; *People v. McCullough* (2013) 56 Cal.4th 589, 591 ["a defendant who fails to contest the [ability to pay a Government Code section 29550.2, subdivision (a)] booking fee when the court imposes it forfeits the right to challenge it on appeal"]).

We reject Wesley's contention that, because the ruling in *Dueñas* "was not foreseeable at the time of [Wesley's] sentencing," there was no legal basis on which to object. Initially, as we introduced *ante*, *Frandsen* explains that, for purposes of objecting to fines, fees, and assessments, the rulings in *Dueñas* were in fact foreseeable. (*Frandsen*, *supra*, 33 Cal.App.5th at pp. 1154-1155.) Further, in a case similar to Wesley's, we recently held that "*even if* Dueñas *was unforeseeable* . . . [, the defendant] forfeited any ability-to-pay argument regarding the restitution fine by failing to object" at the time of sentencing. (*People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 (*Gutierrez*), italics added; accord, *People v. Smith* (2020) 46 Cal.App.5th 375, 395; *People v. Abrahamian* (2020) 45 Cal.App.5th 314, 338; *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1054; *Keene, supra*, 43 Cal.App.5th at pp. 863-864; *People v. Hicks* (2019) 40 Cal.App.5th 320, 328, fn. 3, review granted Nov. 26, 2019, S258946; *People v. Ramirez* (2019) 40 Cal.App.5th 305, 312 (*Ramirez*); *People v. Jenkins* (2019) 40 Cal.App.5th 30, 40-41 (*Jenkins*); *People v. Torres* (2019) 39 Cal.App.5th 849, 860; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464.) We follow these cases here in concluding that Wesley also forfeited *any* ability-to-pay argument as to the section 1202.4 restitution fine of $10,000 by failing to object prior to entry of judgment.

We also apply the forfeiture doctrine to Wesley's belated objections to the Fines, Fees, and Assessments. As we explained *ante*, Wesley was *required* to create such a record with regard to his alleged inability to pay the section 1202.4 restitution fine in order to avoid the forfeiture; and, had he done so, presumably the record would have contained evidence that also addressed his ability to pay the remaining Fines, Fees, and Assessments, thereby preserving the issue for appellate review. (See *Gutierrez, supra*, 35 Cal.App.5th at p. 1033; *Jenkins, supra*, 40 Cal.App.5th at pp. 40-41; see generally *Keene, supra*, 43 Cal.App.5th at pp. 863-864; *Ramirez, supra*, 40 Cal.App.5th at p. 312.)

2. *Ineffective Assistance of Counsel*

Finally, we reject the contention that, because Wesley forfeited appellate consideration of his ability-to-pay due process arguments, his trial attorney provided constitutionally ineffective assistance by failing to object.

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215, citing *Strickland v. Washington* (1984) 466 U.S. 668, 684 (*Strickland*).) This right entitles the defendant "not to some bare assistance but rather to *effective* assistance." (*Ledesma*, at p. 215; accord, *Strickland*, at p. 686.)

In asserting a claim of ineffective assistance of counsel, an aggrieved defendant "must show *both* that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney *and* that counsel's deficient performance resulted in prejudice to defendant in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " (*People*

19

*v. Kipp* (1998) 18 Cal.4th 349, 366, italics added, quoting *Strickland, supra,* 466 U.S. at p. 686.) Stated differently, if the defendant is unable to establish *both* deficient performance *and* prejudice, " 'we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." ' " (*People v. Centeno* (2014) 60 Cal.4th 659, 674-675 (*Centeno*).)

With regard to counsel's performance, to establish ineffective assistance on direct appeal, "the defendant must show '(1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation.' " (*People v. Hoyt* (2020) 8 Cal.5th 892, 985-986.) Here, Wesley has not established that trial counsel lacked a rational tactical purpose for failing to object, since we cannot tell from the appellate record whether, in fact, Wesley may have lacked the financial resources to pay the award of victim restitution or the Fines, Fees, and Assessments. Very simply, in this appeal from the judgment, there is no way of knowing whether counsel may have had information regarding Wesley's financial resources that would have foreclosed a challenge to Wesley's ability to pay. Indeed, when discussing victim restitution, S.M. explained that Wesley received "royalties from Sony. He was awarded multimillions of dollars from Sony in royalties"—to which defense counsel responded, "Apparently she feels he's entitled to millions of dollars from his royalties. I'm sure they'll be coming through in the future."

With regard to prejudice, the defendant must show "a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*Centeno, supra,* 60 Cal.4th at p. 676, quoting *Strickland, supra,* 466 U.S. at p. 694.) "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, at p. 694.) Once again relying on the fact that the record on appeal here contains no indication that Wesley was unable to pay the award of victim restitution or the Fines, Fees, and Assessments, we conclude that Wesley cannot demonstrate that, had trial counsel objected, there is a reasonable probability that the result would have been any different.

For these reasons, Wesley did not meet his burden of establishing a claim of constitutionally ineffective assistance of counsel.

### III.  DISPOSITION

The judgment filed January 23, 2019, amended March 23, 2019, is affirmed.


IRION, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.