Filed 7/9/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>DONNIE WEATHERTON,<br><br>     Defendant and Appellant. | A140186<br><br>(San Mateo County<br>Super. Ct. No. SC075972A) |

      In *People v. Harvey* (1979) 25 Cal.3d 754, 758–759 (*Harvey*) our Supreme Court held that facts underlying charges dismissed as part of a negotiated plea may not, absent contrary agreement by the defendant (now called a "*Harvey* waiver"), be used to impose adverse sentencing consequences. The principle expanded to cover victim restitution (e.g., *People v. Baumann* (1985) 176 Cal.App.3d 67, 74–75), and was soon codified. (Stats. 1988, ch. 287, § 1, adding Pen. Code,[1] § 1192.3, subd. (b) ["If restitution is imposed which is attributable to a count dismissed pursuant to a plea bargain, . . . the court shall obtain a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 from the defendant as to the dismissed count."].)

      The novel issue for decision here is whether, notwithstanding a *Harvey* waiver, a defendant is entitled to an evidentiary hearing in the hope of establishing that no restitution is owing to the victim of a dismissed charge because the defendant did not commit the offense, an issue that arises out of these circumstances:

      On Christmas Eve 2011, Yasmin Jenkins was cleaning the apartment of 62-year-old, wheelchair-bound Donnie Weatherton. Instead of paying Jenkins as he promised,

---

[1] Statutory references are to the Penal Code.

Weatherton shot her in her hand, and then would not let her leave to seek medical attention. A number of firearms were discovered when Weatherton's apartment was searched on January 5, 2012.

Following a preliminary examination, Weatherton was charged by information with committing the following felonies: (1) assaulting Jenkins with a firearm and personally inflicting great bodily injury (§§ 245, subd. (a)(2), 12022.7, subd. (a)); (2) falsely imprisoning Jenkins by violence and the personal use of a firearm (§§ 236, 12022.5, subd. (a)); (3) being a past-convicted felon in possession of a firearm when he shot Jenkins (§ 29800, subd. (a)(1)); (4) unlawful possession of a firearm in a public place on January 5, 2012 (§ 25850, subd. (c)(1)); (5), (6), (7) and (9) being a past-convicted felon in possession of a firearm on or about January 5, 2012 (§ 29800, subd. (a)(1)); and (8) unauthorized possession of a firearm on or about January 5, 2012 (§ 30305, subd. (a)). It was further alleged in the information that Weatherton had a 1992 prior strike conviction for assault with a firearm.

Shortly thereafter Weatherton entered pleas of guilty to two charges, counts 3 and 7, of being a past-convicted felon in possession of a firearm on December 24, 2011, the date Jenkins was shot, and on or about January 5, 2012. Weatherton also admitted the prior strike allegation. At two points on the change of plea form, Weatherton acknowledged making a "Harvey waiver for restitution" and facing liability for "actual restitution per Harvey waiver." This understanding was confirmed by the court prior to Weatherton changing his pleas: "Mr. Weatherton, the D. A. is willing to dismiss the other charges as long as you enter into a *Harvey* waiver, which means I can consider the other counts in determining the sentence and can also order restitution with regards to the dismissed counts. Do you agree and enter into a *Harvey* waiver at this time?" Weatherton replied, "Yes."

At the sentencing hearing the court: heard and granted Weatherton's motion to strike the prior conviction allegation; suspended imposition of sentence; admitted Weatherton to probation upon specified conditions; and reserved jurisdiction to determine

2

restitution to Jenkins.[2] The court denied Jenkins's request to speak, on the ground that "She is not the victim any more. She is not a victim in this case. That case was dismissed. So, she is not technically a victim."

At the restitution hearing held three months later, the court[3] received evidence that Jenkins's insurer had paid $22,14l.08 for the treatment of her gunshot injury.[4] However, Weatherton would not stipulate to this amount because, as his counsel explained: "Mr. Weatherton has always adamantly stated steadfastly that he never committed any crime against Ms. Jenkins," and was present to testify to that effect. With respect to the *Harvey* waiver, Weatherton's counsel argued "it allows the Court to consider uncharged conduct, but . . . it's not an admission to the conduct. I think the burden is still on the People to prove that by a preponderance of the evidence."

The court was not persuaded: "Looking at the minutes of the plea proceedings . . . , the pleas were to counts 3 and 7, which were violations of Penal Code section

---

[2] Probation was not the probation officer's recommendation, which was clearly based on information authorized by the *Harvey* waiver: "It is noted that despite the defendant's physical limitations, this is his second violent conviction involving a firearm. For this reason, he is not suitable for probation supervision and thus a commitment to the California Department of Corrections [and Rehabilitation] is recommended. . . . [¶] Pursuant to [California Rules of Court, rule] 4.421, circumstances in aggravation include the defendant was armed with and used a weapon at the time of the commission of the crime and caused bodily injury to the victim, and the defendant took advantage of a position of trust in that he knew the victim. Further, the defendant has engaged in violent conduct that indicates a serious danger to society."

[3] Judge John Runde presided at the restitution hearing. Both the hearing where Weatherton changed his pleas and the hearing at which he was sentenced had been before Judge Jonathan Karesh. At the sentencing hearing, Weatherton entered a waiver in accordance with *People v. Arbuckle* (1978) 22 Cal.3d 749, so that "another judge could hear just the issue of restitution." Although Weatherton unsuccessfully sought to have the restitution issue decided by Judge Karesh, he does not press this point on appeal.

[4] Jenkins, who was not present at the hearing, had earlier advised the probation officer that she would seek restitution for economic losses other than her medical expenses. However, the subsequent restitution request was limited to hospital and surgical expenses. The documentation of that request, which was received in evidence without objection, was not included in the record on appeal.

29800(a)[1], which were possession of a firearm by a felon. But the minutes say, quote, 'Dismissed counts may be considered at time of sentencing in re: *Harvey*.' Dismissed counts would include Count 1, which was the . . . assault with a firearm charge [on Jenkins]. [¶] So it's clear that the *Harvey* waiver embraced Count 1. [¶] Then looking again at the minutes of the sentencing . . . it says, quote, 'Defendant shall make restitution in amount to be determined by the probation officer [*sic*]. Restitution to victim Yasmin Jenkins,' end quote. . . . [¶] So the Court made a determination already at that sentence hearing that restitution would be ordered for Yasmin Jenkins. So that's . . . a ship that has sailed, and the Court will not revisit that." The court then ordered defendant to pay restitution to Jenkins in the amount of $22,141.08.[5]

Weatherton challenges only the ruling that he could not present evidence, i.e., his testimony, disputing any liability for either of the two dismissed charges which posited Jenkins as the victim of Weatherton's criminal acts. He contends that denial deprived him of "his due process right to present evidence at the restitution hearing that would controvert his culpability for the dismissed counts." The supporting argument runs as follows:

"It is unquestioned that restitution may be granted to a victim in a dismissed count so long as there is a valid *Harvey* waiver by the defendant. (Cal. Pen[.] Code, § 1192.3; *People v. Ozkan* (2004) 124 Cal.App.4th 1072, 1078; see also *People v. Harvey* (1979) 25 Cal.3d 754, 758.) However, even where there is a valid *Harvey* waiver, if the defendant contests the allegations in the dismissed counts, the prosecution bears the burden of proving the allegations in said counts by a preponderance of the evidence. (*People v. Baumann* (1985) 176 Cal.App.3d 67, 80 (When the defendant denies having committed uncharged or dismissed offenses, the prosecution has the burden or proving the

---

[5] The postjudgment restitution order is appealable. (§ 1237, subd. (b); *People v. Denham* (2014) 222 Cal.App.4th 1210, 1213–1214; *People v. DiMora* (1992) 10 Cal.App.4th 1545, 1549–1550.) Because Weatherton is not attacking the legality of his guilty pleas, he was not required to obtain a certificate of probable cause to prosecute this appeal. (§ 1237.5; *People v. French* (2008) 43 Cal.4th 36, 45; *People v. Brown* (2007) 147 Cal.App.4th 1213, 1220.)

4

defendant's culpability by a preponderance of the evidence.)"

"While the judge [i.e., Judge Runde] was correct in noting that there was a valid *Harvey* waiver, he erred by denying Appellant his due process right to present evidence at the restitution hearing controverting the record from the preliminary hearing and showing that he was not culpable for the shooting of Jenkins. . . . Appellant was prepared to testify at the restitution hearing, as he was entitled to do, and the judge erred by refusing to hear his evidence and take it under consideration before determining that Jenkins was entitled to restitution."

Concerning Judge Runde's "ship that has sailed" comment, Weatherton argues: "Judge Runde was also mistaken as to the determination made by the sentencing judge, Judge Karesh. There was no finding made by the sentencing judge as to the culpability of Appellant for any dismissed counts. In fact, Judge Karesh stated on the record that Yasmin Jenkins was 'not a victim in this case' and refused to allow her to testify as a victim. Judge Karesh did order a hearing on restitution, but that . . . is not a dispositive ruling that an alleged victim is entitled to restitution."

Finally, believing that Jenkins's testimony at the preliminary examination was "destroyed," and thus she had "zero credibility" after being "thoroughly impeached and contradicted," Weatherton concludes that by using that testimony 'the prosecution could not meet its burden for proving the assault charge." The appropriate remedy, he concludes, is reversal for a new restitution hearing.

Until this appeal there appears to be no reported decision directly challenging the logical and settled consequence of *Harvey*, namely, that "[b]ecause restitution on the dismissed counts was part of the plea bargain and was a condition of appellant's plea, and there being no dispute that appellant's plea was freely and voluntarily made, had factual basis, and was approved by the court, the court did not err in ordering restitution on [the dismissed counts]."[6] (*People v. Beck* (1993) 17 Cal.App.4th 209, 217.) In mounting that

---

[6] Our research did produce one instance of a less-than-direct challenge: *People v. Goulart* (1990) 224 Cal.App.3d 71. There, the defendant was caught systematically stealing energy from a utility. He pleaded guilty to one of eight counts for interfering

challenge, Weatherton cites *People v. Baumann*, *supra*, 176 Cal.App.3d 67, where the defendant pled guilty to one count of embezzlement and five identical counts were dismissed. The defendant was admitted to probation on condition she make restitution to the victim in an amount that reflected the dismissed counts, as well as uncharged embezzlements.

Judging by the page he cites, Weatherton apparently relies on this passage in *Baumann*: "In *People v. Hartley* (1984) 163 Cal.App.3d 126, 130, it was said: 'Since a defendant will learn of the amount of restitution recommended when [s]he reviews the probation report prior to sentencing, the defendant bears the burden at the hearing of proving that amount exceeds the replacement or repair cost.' (Fn. omitted.) 'The purposes of an order for restitution are . . . rehabilitating the offender and deterring future criminal conduct; these purposes differ from those underlying a civil restitution order. . . . Due process is considered satisfied in the criminal law as long as a separate hearing is held to determine the value of the victim's loss. [Citation.] As noted, however, there is no requirement that the order be limited to the exact amount of loss in which the individual is actually found culpable.' [Citation.]" (*People v. Baumann*, *supra*, 176 Cal.App.3d, 67, 80.) The "As noted" is an obvious incorporation of the preceding paragraph: "The requirements of due process are satisfied by providing the defendant a hearing on ability to pay as well as the extent of the loss occasioned by the defendant's criminal conduct. An order of restitution as a condition of probation is not an abuse of discretion as long as the defendant is given an opportunity to present evidence rebutting her civil liability at the sentencing hearing. [Citations.]" (*Id*. at pp. 79–80.)

with a power line in exchange for dismissal of the other seven, and one count of tampering with a utility meter. As a condition of probation, he was ordered to pay restitution for the energy he had stolen. (*Id*. at pp. 77–78.) The Court of Appeal rejected his claim that the amount of restitution ordered exceeded the scope of his *Harvey* waiver because it "took into account criminal acts, the prosecution of which was barred by the statute of limitations": "[T]he statute of limitations does not bar a trial court from considering previous criminal acts . . . therefore, the amount ordered was not beyond the scope of Goulart's *Harvey* waiver." (*Id*. at p. 81.) It appears that the defendant Goulart, like Weatherton, was in effect arguing that there was no crime.

6

Neither the "extent of the loss occasioned by the defendant's criminal conduct" nor the "opportunity to present evidence rebutting . . . civil liability" language in *Baumann* can—or should—be read as reopening the actual existence or occurrence of a criminal act as alleged in a dismissed count. To do so would not only be contrary to the plain logic of *Harvey*, it would result in absurd consequences—and largely strip *Harvey* of its intended utility. *Baumann* was obviously considering only the context of restitution, not a belated attempt to resolve the substantive issue of guilt. When the Supreme Court allowed that, with the appropriate waiver, a trial court could take account of "the facts underlying, and . . . pertaining to, the dismissed counts[s]" (*Harvey*, *supra*, 25 Cal.3d 754, 758), it was clearly authorizing, because of the defendant's personal acquiescence, a sentencing court to take cognizance of such relevant "facts" as might be shown from the court record.

A court considering victim restitution has an even broader authorization. *Baumann* acknowledged that liability for restitution is not co-extensive with demonstrated criminal culpability. Our Supreme Court has subsequently explained the broadened scope of that authorization, at the same time reiterating the point made in *Baumann*: "California courts have long interpreted the trial courts' discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction. . . . [R]estitution has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation], and by conduct resulting in an acquittal[7] [citation]. There is no

---

[7] Thus, destroying Jenkins's credibility would not guarantee that Weatherton would escape restitution. However tattered Jenkins's credibility may have been at the conclusion of the preliminary examination, it satisfied the magistrate who ordered Weatherton held to answer for assaulting Jenkins. Having examined the transcript of that proceeding, we cannot conclude her testimony meets the exceptionally steep requirements for categorical rejection: " 'Testimony may be rejected only when it is inherently improbable or incredible, i.e., " 'unbelievable per se,' " physically impossible or " 'wholly unacceptable to reasonable minds.' " ' " (*People v. Ennis* (2010)

requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)

Moreover, pursuant to constitutional mandate, the statutory scope of restitution has widened even further. (See Cal. Const., art. I, § 28, subd. (b) ["Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed"]; § 1202.4, subds. (d) ["the court shall consider any relevant factors, including . . . losses as a result of the crime . . . [which] . . . may include pecuniary losses . . . as well as intangible losses, such as psychological harm caused by the crime"], (f)(3) [listing some expenses and losses]; *People v. Williams* (2010) 184 Cal.App.4th 142, 147 ["A victim's restitution right is to be broadly and liberally construed"].) Weatherton points to no authority suggesting that this expansive discretion is confined to probationary restitution.

Restitution hearings are intended to be informal. " ' "Section 1202.4 does not, by its terms, require any particular kind of proof. However, the trial court is entitled to consider the probation report, and, as prima facie evidence of loss, may accept a property owner's statement made in the probation report about the value of stolen or damaged property." [Citations.] " 'This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. [Citation.] When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount.' " [Citations.]' " (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 96.) This is invariably a dollars and cents dispute. As we stated in *People v. Chappellone* (2010) 183 Cal.App.4th 1159, 1172, it is up to the defendant " ' "to demonstrate that the amount of the loss is other than that claimed by the

190 Cal.App.4th 721, 729.) There was consequently no disqualification to accepting it at the restitution hearing.

8

victim," ' " namely, that the amount claimed is excessive.  (See *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.)

The two decisions cited by Weatherton take due process no further.  (See *In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1391 ["statutory directive is meant to afford the minor a reasonable opportunity to challenge the accuracy or validity of the victims' claimed losses.  It is a crucial part of the overall statutory scheme, necessary to satisfy due process, and ensure fundamental fairness in the determination of the restitution ultimately ordered. [¶] In the present case the court refused to consider appellant's proffered evidence challenging the amount and necessity of the victims' claimed economic losses. [¶] The court's action thus did not comply with the statutory directives . . . which expressly allow a minor to challenge the amount of the victims' claimed loss" (fn. omitted)]; *People v. Hartley*, *supra*, 163 Cal.App.3d 126, 130 ["At the conclusion of the hearing the trial court must then make an independent judicial determination of the amount of restitution the defendant shall be required to pay based on the available evidence of the replacement or repair cost of the stolen or damaged property."].)  Weatherton cites no authority that the prosecution is required to prove the corpus delicti of the dismissed counts, whether by a preponderance of the evidence or other standard, above and beyond what was produced at the preliminary examination.

While it is one thing to respond that a victim has inflated a claim for restitution, or may even have no claim at all, it is an entirely different matter to assert, as Weatherton does, that while it is undisputed that the victim suffered compensable losses, he bears no responsibility in that there was no crime because he was acting in self-defense.  (See § 197, subd. 2; *People v. Goins* (1991) 228 Cal.App.3d 511, 517.)  The startled prosecutor, expecting to litigate only the restitution issue, could hardly be expected to let Weatherton's claim go unchallenged.  Weatherton was prepared to testify, but how and with what was the prosecutor to respond?  Not with Jenkins, who refused to testify.  And the prosecutor would face tactical decisions about a number of issues, such as:  (1) whether Weatherton entertained an honest and reasonable belief of the necessity to use deadly force to defend himself from Jenkins; (2) whether Weatherton's use of deadly

9

force was reasonable in the circumstances; and (3) whether Weatherton was not entitled to claim self-defense because he provoked a quarrel that created the ostensible need for self-defense. (See 1 Witkin, Cal. Criminal Law (4th ed. 2012) Defenses, § 68, pp. 509–510.) The court would be equally taken aback, expecting only the regular Friday restitution calendar and now looking at presiding over a felony mini-trial.

It strains credulity to think the concept of *Harvey* waiver meant to approve such a situation. The obvious point of the concept was to regularize and streamline the circumstances in which dismissed charges could be considered at the time of sentencing on charges to which the defendant had pled guilty. Even if Weatherton were allowed to present his version of events, and even if that version were disbelieved, valuable court time would have been consumed. Thus, if Weatherton's connection is accepted, a *Harvey* waiver's utility would be undermined, if not severely curtailed. Indeed, it could truly be asked that if a *Harvey* waiver could be so easily repudiated and evaded, what would be the point of section 1192.3, subdivision (b) requiring one?

"Simply stated, the *Harvey* rationale is that 'a deal is a deal.' " (*People v. Martin* (2010) 51 Cal.4th 75, 80.) So is a *Harvey* waiver. Yet, having expressly agreed to a deal, and received the benefits of it, Weatherton now wants to repudiate it by trying to recast or reinterpret in his favor "the facts underlying, and . . . pertaining to, the dismissed counts[s]." (*Harvey*, *supra*, 25 Cal.3d 754, 758.) Weatherton has never argued he was unaware that he faced having to pay restitution to Jenkins even if the counts naming her as the victim were dismissed, and it is reasonable to assume that the other counts involving Jenkins were dismissed in the expectation that restitution to her would be ordered. Weatherton never asked to have his guilty pleas withdrawn because of a misapprehension on this point.

Weatherton lays considerable emphasis on Judge Karesh's comment at the sentencing hearing that Jenkins was "not a victim." The comment was true for purposes of that proceeding, not for all time. Judge Runde was correct to treat that comment as not binding at the restitution hearing because Weatherton had personally agreed at the time he changed his pleas and made his *Harvey* waiver that restitution to Jenkins for the

10

dismissed counts was a reserved issue. Only the amount of that restitution remained at issue, not Jenkins's entitlement to what restitution could be proven. Weatherton had the opportunity to dispute the amount but he elected not to do so.

A deal is a deal.

The restitution order is affirmed.


_____

Richman, J.


We concur:


_____

Kline, P.J.


_____

Stewart, J.


A140186, *People v. Weatherton*

11

Trial Court:                            San Mateo County Superior Court

Trial Judge:                            Honorable John W. Runde

Attorney for Defendant:                 Law Offices of Hanlon & Rief, Stuart
                                        Hanlon and Nathan Robert Peterson


Attorneys for Plaintiff and Respondent: Kamala D. Harris, Attorney General,
                                        Gerald A. Engler, Senior Assistant
                                        Attorney General, Masha A. Dabiza,
                                        Deputy Attorney General, Na'Shaun Neal,
                                        Deputy Attorney General,  Elizabeth W.
                                        Hereford, Deputy Attorney General