Filed 1/12/23  P. v. Wright CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B319212 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA076641) |
| v. | |
| JOHN EDWARD WRIGHT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

Micah Reyner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

John Edward Wright appeals from a restitution order requiring him to pay $1,176.93 to Rasa Zumaiti to install security equipment at her home.  Wright was charged with first degree robbery and first degree burglary of Zumaiti's home, but the charges were dismissed pursuant to a plea agreement in which Wright pleaded no contest to two counts of second degree robbery of other victims.  Wright contends the trial court erred in ordering restitution for the security equipment because Penal Code section 1202.4, subdivision (f)(3)(J),[1] limits restitution for a victim's home security expenses to cases involving a violent felony or a violation of section 273.5 (willfully inflicting corporal injury on a spouse, cohabitant, or other specified victims).

Because Wright stipulated as part of the plea agreement that the trial court could consider the facts underlying the dismissed counts (both violent felonies) in awarding restitution, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Complaint and Wright's Plea Agreement*

Wright was charged in an amended felony complaint with first degree burglary, person present, on June 14, 2019 of a dwelling occupied by Zumaiti (§ 459; count 1); second degree robbery of Jorge Molina on June 20, 2019 (§ 211; count 2); misdemeanor brandishing a replica gun on June 20, 2019 (§ 417.4; count 3); second degree robbery of Fredi Herrera on June 22, 2019 (§ 211; count 4); second degree robbery of Heather Parnell on June 24, 2019 (§ 211; count 5); and first degree residential robbery of Zumaiti on June 14, 2019 (§ 211; count 6).

---

[1]    Further statutory references are to the Penal Code.

2

The complaint specially alleged as to count 4 that Wright personally used a deadly weapon in the commission of the robbery of Herrera (§ 12022, subd. (b)(1)) and inflicted great bodily injury on Herrera (§ 12022.7, subd. (a)). The complaint also alleged Wright had a prior strike conviction of robbery within the meaning of section 667, subdivision (a)(1), and the three strikes law (§§ 667, subds. (b)-(j), 1170.12).

On September 4, 2019 Wright entered into a negotiated plea agreement under which he pleaded no contest to two counts of second degree robbery of Molina and Herrera (counts 2 and 4) and admitted the special allegation he inflicted great bodily injury on Herrera. Wright also pleaded no contest to one count of first degree burglary charged in a separate case (no. MA076173). The remaining charges, including the counts involving Zumaiti (counts 1 and 6), were dismissed pursuant to the plea agreement. Wright initialed the statement on the "plea form with explanations and waiver of rights—felony" that "I understand and agree that the sentencing judge may consider facts underlying dismissed counts to determine restitution and to sentence me on the counts to which I am entering a plea." At the time Wright entered the plea, the trial court[2] inquired whether Wright had read the form or his attorney read it to him, and Wright replied, "Yes." Wright also responded in the affirmative when asked whether he understood "everything on the form including all of [his] constitutional rights and consequences of [the] plea." Wright confirmed he had sufficient time to discuss the waiver form with his attorney and had initialed and signed the form. The court advised Wright, "If there's any direct victim restitution in this case, [you are] going to be responsible for that

---

[2]    Judge Robert G. Chu.

3

under Penal Code Section 1202.4(f)." Wright stated he understood the consequences of the plea and did not have any questions about the court's advisements.

On September 25, 2019 the trial court[3] sentenced Wright to an aggregate state prison term of eight years four months, comprised of the middle term of three years on count 4 for second degree robbery, plus three years for the great bodily injury enhancement, plus one year on count 2 for second degree robbery (one-third the middle term of three years), plus one year four months on the first degree burglary charge in case number MA076173 (one-third the middle term of four years). Among other fines and fees, the court imposed a restitution fine of $2,400 (§ 1202.4, subd. (b)) and suspended a parole revocation restitution fine in the same amount (§ 1202.45).

B.    *The Restitution Hearing*

A victim restitution hearing was held on March 18, 2022.[4] Zumaiti testified that at 2:00 or 3:00 in the morning of June 14, 2019 she was at her home when Wright came to her door. Zumaiti opened the door and saw that another man, who had been obscured by the door, was waiting outside with Wright. The man "leaped in and pinned [Zumaiti] down and turned [her] head away from [her] purse." After some time, both men left her home. When Zumaiti was able to stand up, she found that at least $500 in cash had been taken from her purse, and two cartons of cigarettes had been removed from her refrigerator. Zumaiti

---

[3]    Judge Charles A. Chung sentenced Wright. At the initial plea hearing, Wright agreed that a different judge could sentence him at a later date.

[4]    Judge Kathleen Blanchard presided over the restitution hearing.

4

stated each carton of cigarettes was worth $90.  In addition, one of her bedroom drawers had been pulled out.

After the incident, Zumaiti purchased a security door, and her brother-in-law installed a video security system in her home. The trial court admitted into evidence a receipt from an electronics store showing the purchase on June 18, 2019 of a digital security system with night vision cameras for $159.99, plus $19.99 for an extended warranty, and a receipt from a home improvement store showing the purchase on July 21, 2019 of a security door for $316.95.  Zumaiti installed the security equipment to prevent this type of incident from happening again.

The People rested after the court admitted the two receipts into evidence.[5]  The trial court found Zumaiti's claimed economic losses totaled $1,176.93 including the home security equipment, cash, and cigarettes.  Defense counsel argued, "I do want to object to the security door and the security system.  Those were expenses that were supposed to protect [Zumaiti] in the future against any attacks, or crimes of this nature.  And they are preventive measures and remedial measures.  And I just want the record to be clear that we're objecting to those expenses."  The court found the Penal Code specifically allowed reimbursement of

---

[5]    Wright waived his right to appear at the victim restitution hearing.  Defense counsel did not call any witnesses. He offered as exhibit A an "Offender Restitution Payment History" form from the California Department of Corrections and Rehabilitation (CDCR) showing that Wright paid $2,400 toward the restitution fine, arguing Wright's payments should be applied first to satisfy any direct victim restitution the court might order. The trial court held its jurisdiction was limited to determining the amount of direct victim restitution and Wright would have to raise with CDCR or another entity the allocation of payments he had already made.  Wright does not raise this issue on appeal.

those types of preventative measures, and it ordered restitution to be paid to Zumaiti in the amount of $1,176.93.[6]

Wright timely appealed from the restitution order.

## DISCUSSION

A.    *Governing Law and Standard of Review*

"Under the California Constitution, as amended in 1982 by Proposition 8 (commonly known as The Victims' Bill of Rights), every crime victim has a right to be compensated by the defendant for losses incurred as a result of the defendant's crime. (Cal. Const., art. I, § 28, subd. (b)(13).)" (*People v. Martinez* (2017) 2 Cal.5th 1093, 1100.)  Consistent with this constitutional provision, section 1202.4, subdivision (a)(1), provides, "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime."  Section 1202.4, subdivision (f), similarly states, with limited exceptions not applicable here, "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by

---

[6]    The trial court at the victim restitution hearing stated restitution was ordered in the amount of $1,076.93, instead of the correct total of claimed expenses ($1,176.93). However, earlier in the hearing, the court made an express determination Zumaiti's claimed expenses totaled $1,176.93, which is consistent with the court's minute order and the March 18, 2022 victim restitution order signed by the court. Wright acknowledges the court ordered restitution in the amount of $1,176.93.

court order, based on the amount of loss claimed by the victim or victims or any other showing to the court."

Section 1202.4, subdivision (f)(3), specifies that "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to," 12 enumerated categories of victim expenses.  As relevant here, subdivision (f)(3)(J) includes "[e]xpenses to install or increase residential security incurred related to . . . a violent felony as defined in subdivision (c) of Section 667.5, including, but not limited to, a home security device or system, or replacing or increasing the number of locks."

We review a restitution order for an abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663; *People v. Baudoin* (2022) 85 Cal.App.5th 1184, 1191.)  "'However, a restitution order "resting upon a '"demonstrable error of law"' constitutes an abuse of the court's discretion."'" (*Baudoin*, at 1191; accord, *People v. Millard* (2009) 175 Cal.App.4th 7, 26; see *People v. Williams* (2010) 184 Cal.App.4th 142, 146 ["when the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal"].)

B.      *The Trial Court Properly Awarded Restitution to Zumaiti for Home Security Equipment*

Wright contends the trial court erred in awarding restitution to Zumaiti for the security door and video security system because the counts relating to Zumaiti were dismissed, and "[a]s part of his plea, [Wright] never conceded that he committed a violent crime against [Zumaiti]," nor did the trial

court make a finding a violent crime was committed. The People respond that Wright was charged with two violent felonies against Zumaiti, and those charges were dismissed as part of a plea bargain that included a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey* waiver), under which Wright agreed the sentencing judge could consider the facts underlying the dismissed counts in ordering restitution.[7] We agree that pursuant to the *Harvey* waiver, the trial court properly ordered restitution for the security equipment installed by Zumaiti based on Wright's commission of two violent felonies.

The Supreme Court in *People v. Harvey, supra*, 25 Cal.3d at page 758 held that a trial court may not impose any adverse sentencing consequences on a defendant as a result of a plea bargain based on dismissed counts absent an agreement by the defendant. (See *People v. Brooks* (2017) 15 Cal.App.5th 331, 334, fn. 3 ["A *Harvey* waiver is a defendant's agreement, as part of a plea bargain, to allow the sentencing court to consider facts supporting dismissed counts."]; *People v. Weatherton* (2015) 238 Cal.App.4th 676, 678 (*Weatherton*) ["facts underlying charges

---

[7] The People contend Wright forfeited his argument the trial court was barred under section 1202.4, subdivision (f)(3)(J), from ordering restitution for security equipment by failing to raise it below. However, defense counsel objected to restitution for the security door and video security system on the grounds they were "preventive measures and remedial measures." Although Wright's attorney did not specifically argue Wright had not committed a violent felony, his objection adequately apprised the prosecution and the court of Wright's contention security equipment was not an authorized category of restitution expenses. We therefore decline to find forfeiture. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["application of the forfeiture rule is not automatic"].)

dismissed as part of a negotiated plea may not, absent contrary agreement by the defendant (now called a *Harvey* waiver), be used to impose adverse sentencing consequences"].)  The principle in *Harvey* that the trial court may consider the facts supporting the dismissed count by agreement of the defendant was extended in *People v. Baumann* (1985) 176 Cal.App.3d 67, 74-75 to cover restitution, and was later codified in section 1192.3, subdivision (b).  (See § 1192.3, subd. (b) ["If restitution is imposed which is attributable to a count dismissed pursuant to a plea bargain, . . . the court shall obtain a waiver pursuant to [*Harvey*] from the defendant as to the dismissed count."]; *Weatherton*, at p. 678.)

        As discussed, Wright's plea agreement included a *Harvey* waiver in that he agreed the sentencing judge could "consider facts underlying dismissed counts to determine restitution" in sentencing him on the counts to which he pleaded.  Wright concedes the *Harvey* waiver he signed is valid and enforceable.  But without citing any authority, Wright asserts he may challenge whether Zumaiti's testimony established he had committed a violent felony despite his agreement the same testimony could be considered in determining restitution.  Wright's argument misapprehends the effect of the *Harvey* waiver.

        The prosecution is not required at a victim restitution hearing to prove the defendant committed the offenses dismissed under a plea agreement that includes a *Harvey* waiver.  *Weatherton, supra*, 238 Cal.App.4th 676 is directly on point.  There, Donnie Weatherton shot his housekeeper in the hand and prevented her from leaving his apartment to seek medical attention.  (*Id.* at p. 679.)  Facing nine charges, including assault with a firearm and false imprisonment, Weatherton agreed to plead guilty to two counts of being a felon in possession of a firearm, and in exchange the prosecution dismissed the

remaining charges with a *Harvey* waiver. (*Ibid.*) At the victim restitution hearing, the trial court admitted evidence the housekeeper's insurance paid more than $22,000 for medical treatment of her gunshot wound. (*Id.* at p. 680.) Weatherton requested he be allowed to testify that he acted in self-defense, arguing he did not owe restitution because he was not liable for committing a crime against the housekeeper. (*Id.* at pp. 680-681.) Further, his *Harvey* waiver "'allows the [c]ourt to consider uncharged conduct, but . . . it's not an admission to the conduct. I think the burden is still on the People to prove that by a preponderance of the evidence.'" (*Id.* at p. 680.)

The Court of Appeal, in affirming the trial court's restitution order (and denial of Weatherton's request to testify), explained, "Weatherton cites no authority that the prosecution is required to prove the corpus delicti of the dismissed counts, whether by a preponderance of the evidence or other standard, above and beyond what was produced at the preliminary examination. [¶] While it is one thing to respond that a victim has inflated a claim for restitution, or may even have no claim at all, it is an entirely different matter to assert, as Weatherton does, that while it is undisputed that the victim suffered compensable losses, he bears no responsibility in that there was no crime because he was acting in self-defense." (*Weatherton, supra*, 239 Cal.App.4th at p. 685.) The court reasoned, "[i]t strains credulity to think the concept of a *Harvey* waiver meant to approve such a situation [allowing the defendant to litigate liability]. The obvious point of the concept was to regularize and streamline the circumstances in which dismissed charges could be considered at the time of sentencing on charges to which the defendant had pled guilty. . . . [I]f Weatherton's contention is accepted, a *Harvey* waiver's utility would be undermined, if not severely curtailed. Indeed, it could truly be asked that if a

10

*Harvey* waiver could be so easily repudiated and evaded, what would be the point of section 1192.3, subdivision (b) requiring one?" (*Ibid.*)

In his reply brief, Wright argues *Weatherton* is inapposite because Wright conceded his obligation to pay restitution to Zumaiti for the cigarettes and cash that were taken and only challenges his liability for Zumaiti's security expenses on the basis he did not commit a violent felony under section 1202.4, subdivision (f)(3)(J). This is a distinction without a difference. As discussed, under a *Harvey* waiver, the prosecution is not required to prove the facts that show the defendant committed the crime. Here, the complaint charged Wright with two violent felonies, as defined in section 667.5, subdivision (c), based on factual allegations that on June 14, 2019, Wright robbed Zumaiti by force and burgled her home while she was present. In entering his plea, Wright understood that restitution for Zumaiti would be based on these alleged facts and charged violent felonies.[8] Therefore, Zumaiti's recovery of home security

---

[8] Because we hold the prosecution was not required to prove Wright's liability for commission of a violent felony at the victim restitution hearing, we do not reach whether a victim's home security expenses are recoverable for nonviolent felonies given the language in section 1202.4, subdivision (f)(3), authorizing restitution for a victim's expenses "including, but not limited to" home security expenses recoverable for violent felonies under subdivision (f)(3)(J)). (See *People v. Brooks* (2018) 23 Cal.App.5th 932, 942-943 [section 1202.4, subdivision (f), did not bar recovery by victims of nonviolent felonies for home security expenses because statute provided for recovery "'including, but not limited to'" home security expenses for victims of violent felonies]; but see *People v. Salas* (2017) 9 Cal.App.5th 736, 740 [victim could not recover home security

11

expenses was proper under section 1202.4, subdivision (f)(3)(J). Only the amount of the loss remained in dispute.

## DISPOSITION

The restitution order is affirmed.


FEUER, J.


We concur:


SEGAL, Acting P.J.        HOWARD, J.*

---

expenses because section 1202.4, subdivision (f), explicitly limited recovery of home security expenses to victims of violent felonies, and defendant was not convicted of a violent felony].)

In *Salas, supra*, 9 Cal.App.5th at page 739, the defendant pleaded no contest to one count of felony domestic violence under section 273.5, subdivision (a), but at the time section 1202.4, subdivision (f)(3)(J), provided for recovery of home security expenses only for victims of violent felonies. In 2018 the Legislature amended section 1202.4, subdivision (f)(3)(J), to apply to commission of violent felonies and domestic violence under section 273.5. (Assembly Bill No. 2226 (2017-2018 Reg. Sess.) § 1.)

* Judge of the Marin County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.