Filed 2/20/25  P. v. Younger CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>PRECIOUS YOUNGER,<br><br>　　Defendant and Appellant. | A167530<br><br>(Contra Costa County<br>Super. Ct. No. 1963321) |

Precious Younger[1] appeals from the trial court's restitution order making her jointly and severally liable for $18,467.63 in medical expenses incurred by the victim of an assault by Younger and her codefendant Exzaver Allen Hughes.  Younger contends that the trial court unlawfully found her liable for restitution pursuant to Penal Code section 1202.4 because the victim's injuries could not be attributed to conduct with which she was charged or convicted; Hughes, only, was responsible for stabbing the victim, and the stab wound was the sole cause of the medical expenses for which the Victim Compensation Board (VCB) reimbursed the victim, Evan Doubrava.[2]

---

[1] Younger's counsel reported to the trial court that Younger does not use gender titles, but Younger later corrected the court, approving the court's use of the female pronoun "she."  We use "she/her" pronouns to refer to Younger.

[2] Undesignated statutory references are to the Penal Code.

The Attorney General argues that Younger waived her right to appeal the restitution issue and relatedly was required to, but did not, obtain a certificate of probable cause. Even if Younger's claim is cognizable on appeal, the Attorney General adds, the trial court had broad discretion to impose restitution as a condition of probation pursuant to section 1203.1, including as to offenses or conduct for which Younger was not charged or convicted, and in this case the restitution amount is reasonably related to Younger's criminal conduct, consistent with the factors set forth in *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*). We affirm.

## BACKGROUND

On the evening of June 18, 2021, Concord police officer Wayne Leonard responded to a call of a fight at a gas station convenience store. Doubrava was lying down, bleeding from a two-inch gash in his lower abdomen. Doubrava told Leonard that he was going to the convenience store when Younger and Hughes asked him for money. Doubrava pointed to Younger's shoes and questioned why the two were asking for change, implying that they did not look like they needed money. Hughes asked Doubrava, "Do you have a fucking problem?"

As described by Leonard, the surveillance footage showed that Doubrava was "the first to square up." He was walking toward the storefront when he stopped, turned, and approached Hughes and Younger while making fists. He then "rush[ed] past" them and went around the corner of the store. Hughes believed Doubrava was trying to lure him and Younger out of sight of the security camera to fight them. Doubrava was also threatening and verbally challenging Hughes and Younger to fight. At some point, Hughes swung a traffic cone at Doubrava; the first physical contact shown on the footage occurred when Hughes punched Doubrava.

After the three returned to the front of the store, they exchanged punches. During the altercation, Younger got in between Hughes and Doubrava several times. The third time, Doubrava punched Younger in the face causing her to lose balance. The footage did not show Younger having thrown any punches to that point. Doubrava eventually stumbled to the ground. Younger grabbed his hair and, with Hughes, continued the assault.

Hughes told Leonard that the knife was his and that he had opened the knife and was holding it as he punched Doubrava, so he must have stabbed him, although he did not remember doing so. No evidence indicated that Younger stabbed Doubrava. Hughes said he was defending himself and Younger from Doubrava.

Doubrava spent four days in the hospital and had to take between two and one-half and three months off work to recover from the stab wound.

Younger and Hughes were charged by felony complaint, with count 1 alleging assault with a deadly weapon (the knife), with a serious bodily injury enhancement, and count 2 alleging assault by means likely to produce great bodily injury, also with a great bodily injury enhancement. Hughes was charged in both counts 1 and 2, while Younger was charged only in count 2. At the preliminary hearing, the prosecution relied on a "group assault" theory as to the count 2 enhancement, noting both defendants attacked Doubrava when he was on the ground. Hughes pointed out the absence of evidence of injury other than from the stab wound. Younger emphasized that no evidence indicated that she inflicted the stab wound. Ultimately, while Hughes was held to account for counts 1 and 2, the court found insufficient evidence that Younger inflicted great bodily injury to support the count 2 enhancement.

In April 2022, Younger pled no contest to one count of simple battery, with a sentence of one year of court probation. The court described the probation conditions and Younger completed an advisement of rights form, which the court reviewed with her. After prompting by the prosecutor, the court explained that if any victim on any count, even dismissed ones, had incurred a loss, Younger would "be on the hook for it." The court noted its "authority to order [Younger] to pay that restitution if the Court determines it's a legitimate claim," and asked Younger if she understood and agreed. Younger answered "Yes." The court stated that the VCB claim of $18,467.63 would apply to both defendants "because it's the same deal."

The court continued: "Let me lay this out. The law sets up this system for the [VCB] to pay out claims for restitution or to compensate victims of crime for losses. There's a process that the victims have to go through to submit that claim to the [VCB] and the [VCB] considers everything submitted in support of it. And if it determines that it's a legitimate claim that should be paid, they pay it out to the victim. [¶] How does that affect you? Well, if I'm going to reserve restitution and you're on the hook for any restitution as a result of your case, if the [VCB] has undergone the statutory process, then I'm going to treat that as a presumptive restitution amount, and I'm going to make it a condition of probation. But it's going to be subject to your right to have a hearing to dispute it. . . . If it's just the claim and the VCB hasn't paid the money, the statutory process has not gone through, then I say pay restitution as determined by the Court, so the burden shifts back to the People."

The court asked the parties to respond, and Younger's substitute counsel pointed out that the issue had not been raised with her assigned counsel. Counsel asked the court to "reserve restitution today and put the

4

matter on for . . . the future for [assigned counsel] to be heard as to the proper procedure by which restitution would be set." Hughes's counsel agreed, commenting that "the issue of causation and restitution is going to be something that likely, given the VCB payout, would be litigated at a restitution hearing." The court explained its understanding that some form of restitution was part of the plea deal, the only question being "what is and isn't the appropriate" amount. The prosecutor agreed as to the presumption of restitution, because the plea offer required restitution, with the court reserving the amount for a later hearing.

The court reaffirmed that the starting presumption was that Hughes and Younger owed restitution and the only question—for later resolution— was in what amount. The court explained that the defendants would enter their pleas knowing the amount of restitution would be resolved this way. After discussion, counsel agreed they would proceed accordingly, with a *Harvey*[3] waiver. Younger confirmed that she had understood the discussion and it accurately summarized the plea agreement. The court then addressed both defendants: "I'm going to order you both as conditions of probation to pay restitution on all counts here, not just the ones you're pleading to, but I'm not going to specify the amount. I'm going to set it for a court date for you to have a hearing . . . to determine what if any amount you got to pay. But it will definitely—if it's determined by the Court that there's restitution to be paid to the [VCB] . . ., you're on the hook for that, whatever the Court decides." Younger and her counsel agreed.

---

[3] "In *People v. Harvey* (1979) 25 Cal.3d 754, 758–759 [citation], our Supreme Court held that facts underlying charges dismissed as part of a negotiated plea may not, absent contrary agreement by the defendant (now called a *Harvey* waiver), be used to impose adverse sentencing consequences." (*People v. Weatherton* (2015) 238 Cal.App.4th 676, 678 (*Weatherton*).)

After confirming that Younger was freely agreeing to the plea, the court accepted her plea. The court reiterated the applicable probation conditions, including: "Actual restitution—you're to pay restitution, and this applies to all counts since there's a *Harvey* waiver, as determined and directed by the Court including to the [VCB] if it's compensated any victim in this case." The court set a restitution hearing date.

At the restitution hearing held on January 20, 2023, Younger argued that she should not be jointly liable with Hughes for the stabbing injury. The court took the matter under submission. The hearing resumed on March 24, with the court citing section 1202.4, subdivision (f)(4)(a), as establishing the presumption that Hughes and Younger had to rebut to avoid paying restitution. Younger asked the court to consider her individually, emphasizing that Doubrava's medical bills arose only from the stab wound inflicted by Hughes. Hughes's counsel argued that Hughes should not have to pay for defending himself against a larger, aggressive assailant who decided to pick a fight with him. The prosecution responded that these disputes were better addressed at trial; through their pleas, defendants had accepted financial responsibility for Doubrava's injury.

The court described the surveillance footage, noting that Hughes and Younger were more aggressive than they had acknowledged, and found that neither defendant had rebutted the presumption that Doubrava's injuries were directly caused by their joint criminal conduct. It ordered Younger to be jointly and severally responsible for the $18,467.63 in restitution to the VCB.

**DISCUSSION**

## I.     Standard of Review

We review a grant of restitution under either section 1202.4 or section 1203.1 for abuse of discretion. (*People v. Nichols* (2017) 8 Cal.App.5th 330, 341; *People v. Giordano* (2007) 42 Cal.4th 644, 663 & fn. 7.)

## II.     Appellate Waiver and Certificate of Probable Cause

The Attorney General argues that we may not consider Younger's challenge to the court's restitution order because she waived her right to appeal and should have obtained a certificate of probable cause. (§ 1237.5; Cal. Rules of Court, rule 8.304(b); see *People v. Becerra* (2019) 32 Cal.App.5th 178, 185 (*Becerra*); *People v. Panizzon* (1996) 13 Cal.4th 68, 86.) The Attorney General contends that Younger is challenging the trial court's authority to order restitution at all, not just the amount. Younger responds that, when the court stated that it was reserving restitution, it explained that it would "determine what *if any* amount you got to pay" and that Younger was on the hook "*if* it's determined by the Court that there's restitution to be paid to the [VCB]." (Italics added.)

We agree that the court's remarks left open the possibility that it could find the amount Younger owed was zero, and therefore that she was not required to obtain a certificate of probable cause to contest the award in any amount. (Cal. Rules of Court, rule 8.304(b)(2)(B) [no certificate of probable cause required for "matters occurring after the plea . . . that do not affect the validity of the plea"]; see *Weatherton, supra,* 238 Cal.App.4th at pp. 680, fn. 5 & 686 [no certificate of probable cause required for appeal from post-judgment restitution order because appeal did not implicate validity of plea].) We also find that Younger's general waiver of her appeal rights does not preclude her challenge here, which relates to a claimed error that arose only

7

after she entered her plea and which the court and parties agreed would be reserved for future proceedings independent of her plea. (See *Becerra, supra,* 32 Cal.App.5th at pp. 186–187.)

## III. Restitution

Contending that the trial court awarded restitution pursuant to section 1202.4, Younger argues that the award was unauthorized because section 1202.4 permits restitution only for injuries caused by her criminal conduct, and Doubrava's injury was caused solely by Hughes's act of stabbing him. The Attorney General disputes Younger's premise, arguing that the trial court ordered her to pay restitution as a condition of probation pursuant to section 1203.1, which does not require the same causal nexus between the victim's injury and the defendant's conduct, but only, as here, some reasonable relationship between the two. (See, e.g., *People v. Woods* (2008) 161 Cal.App.4th 1045, 1050–1052 [explaining that affirming restitution award in section 1203.1 case was not inconsistent with finding similar restitution award invalid in section 1202.4 case, even though in both cases the defendant did not participate in the charged murder but was merely an accessory after the fact].)

Younger's opening brief merely assumed, without argument, that the court's restitution award was made pursuant to section 1202.4 rather than section 1203.1. In response to the Attorney General, Younger argues in her reply brief that the award must have been based on section 1202.4 because (1) the trial court did not "grant probation within the meaning of the Penal Code" (as required for an award under section 1203.1) because Younger was sentenced to, and served, 14 days in jail; (2) "there is nothing in the record to indicate the trial court ordered restitution pursuant to its discretion under section 1203.1"; (3) the court held a separate restitution hearing that would

8

not have been required under section 1203.1; (4) at the hearing, the court expressly found that Younger failed to rebut the presumption under section 1202.4, subdivision (f)(4)(A), that any amount paid by the VCB was directly caused by her criminal conduct; and (5) the written order was made on Judicial Council Form CR-110, which states that it is to be used for orders under section 1202.4, subdivision (f). Assuming these arguments were not forfeited by the failure to make them in the opening brief, we find them unpersuasive.

First, section 1203.1, subdivision (a) expressly allows a court to "imprison the defendant in the county jail" as a condition of probation. That is what happened here: "As conditions of probation you will be required to serve jail time that's going to be time served, no further jail time." The cases interpreting section 1202.4 make clear that a nonprobationary restitution order applies only to those defendants who are sentenced to a state prison term, not a county jail term. (*People v. Selivanov* (2016) 5 Cal.App.5th 726, 786; *People v. Lai* (2006) 138 Cal.App.4th 1227, 1234, 1246.)

Second, it is not true that there is nothing in the record to indicate that the trial court was relying on its authority under section 1203.1. As noted above, the court stated at the plea hearing: "I'm going to treat [the VCB payment] as a presumptive restitution amount and I'm going to make it a condition of probation." And again: "I'm going to order you both as conditions of probation to pay restitution on all counts here . . . ." While the court did not refer expressly to the statute, these statements show that it intended to impose restitution as a condition of probation. (§ 1203.1, subds. (a)(4), (b).)

Third, Younger cites no authority to show that it is irregular or improper for a trial court to give the parties an opportunity to be heard on

9

any restitution award made pursuant to section 1203.1.  She does note that "[t]here is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.)  That observation, however, does not warrant a conclusion that the trial court's decision to hold a hearing at which the parties were permitted to address the appropriate amount means that it was not relying on its authority under section 1203.1. Moreover, the court may have decided that a separate hearing was appropriate in light of its decision, discussed next, to rely on the presumption under section 1202.4, subdivision (f)(4)(A).

Fourth, the trial court's statement that it would treat the VCB payment "as a presumptive restitution amount" that would be made "a condition of probation" suggests that it was borrowing the presumption under section 1202.4, subdivision (f)(4)(A) to determine the appropriate award under section 1203.1.  We will assume, as Younger argues (and as the Attorney General implicitly concedes by ignoring it), that the trial court erred insofar as it found she did not rebut the presumption by showing that Doubrava's injury was "directly caused" by Hughes.  But adhering to her position that the trial court imposed restitution pursuant to its authority under section 1202.4, Younger expressly declines in her reply brief to respond to the Attorney General's argument that the award was an appropriate exercise of discretion under section 1203.1 as measured by the three *Lent* factors.  The upshot of that argument is that any error the trial court made in applying section 1202.4, subdivision (f)(4)(A) was harmless.  (See, e.g., *People v. Brewer* (2001) 87 Cal.App.4th 1298, 1311–1312 [section 1203.1 probation condition erroneously ordered in reliance on one statute was not prejudicial where it was reasonable under *Lent* and authorized by alternative statute];

10

*People v. Tuggles* (2009) 179 Cal.App.4th 339, 387 ["When a trial court misunderstands the scope of its discretion, we must assess whether the error resulted in prejudice to the appellant"].)  By declining to address the Attorney General's argument, Younger has forfeited any contention that she was prejudiced by the claimed error in the court's application of section 1202.4, subdivision (f)(4)(A) when ordering restitution under section 1203.1.  (See *People v. Vance* (2023) 94 Cal.App.5th 706, 717.)[4]

Fifth and finally, we disagree that the trial court's use of Judicial Council Form CR-110, entitled "Order for Victim Restitution," indicates that it intended to order restitution pursuant to section 1202.4 and not section 1203.1.  Younger overlooks that section 1203.1, subdivision (a)(3) provides that "[t]he restitution order shall be fully enforceable as a civil judgment forthwith and in accordance with Section 1202.4 of the Penal Code."  By using Form CR-110, the trial court, "in accordance with Section 1202.4," made its restitution order into an enforceable civil judgment.  (See, e.g., *Nationwide Ins. Co. of America v. Tipton* (2023) 91 Cal.App.5th

---

[4] In any event, we have no trouble concluding that the trial court would have made the same award if it had addressed the *Lent* factors, and would not have abused its discretion by doing so.  (See *Lent, supra*, 15 Cal.3d at p. 486.)  First, the injury was reasonably related to the assault for which Younger was convicted.  The stabbing apparently occurred while Hughes, with Younger, was punching Doubrava.  And at the change of plea hearing, Younger agreed to a *Harvey* waiver, which the trial court noted allowed it to look to all charged conduct in determining the amount of restitution.  Second, the award related to conduct that was criminal:  Although Hughes asserted that he stabbed Doubrava in defense of himself and Younger, he accepted criminal responsibility for the assault by his plea, as did Younger by hers.  Third, a restitution order that attempts to make a victim whole is generally deemed a deterrent to future criminality.  (*People v. Carbajal, supra*, 10 Cal.4th 1114, 1123.)  Here, the $18,467.63 sum is large enough to be an effective deterrent and therefore is reasonably related to future criminal conduct.

11

1355, 1361; *In re Keith C.* (2015) 236 Cal.App.4th 151, 154–156.)  Its use of the form is entirely consistent with the entry of a restitution order under section 1203.1.

Accordingly, we conclude that the trial court made its restitution award pursuant to section 1203.1, and that any error in its reliance on the presumption under section 1202.4, subdivision (f)(4)(A) in doing so was harmless.

## DISPOSITION

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
STREETER, J.