Filed 10/24/24  P. v. Adams CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTINE AMY ADAMS,<br><br>    Defendant and Appellant. | A169169<br><br>(Napa County<br> Super. Ct. No. CR184934) |

Defendant Christine Amy Adams appeals from an order awarding restitution to two crime victims.  On appeal, she contends:  (1) the trial court had no jurisdiction when it prescribed the restitution amounts because her term of probation had expired by that time; (2) the court abused its discretion and violated her due process rights because the restitution amounts were unsupported by a factual or rational basis; and (3) equity barred the People from seeking a restitution order.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In October 2017, the People charged defendant with identifying information theft of 10 or more persons (Pen. Code, § 530.5, subd. (c)(3),[1]

---

[1]     All further undesignated statutory references are to the Penal Code.

1

count 1), identifying information theft with a prior (§ 530.5, subd. (c)(2), count 2), false personation (§ 529, count 3), giving false information to a police officer (§ 148.9, subd. (a), count 4), and possession of controlled substance paraphernalia (Health and Saf. Code, § 11364, count 5).

Defendant pleaded no contest to counts 1 and 3.[2] Per the terms of her plea agreement, the remaining counts would be dismissed, but the court could consider the dismissed charges in determining the appropriate sentence and restitution. (*People v. Harvey* (1979) 25 Cal.3d 754.) In her plea form, defendant affirmed her understanding that she may be ordered to pay restitution to the victims, if any. The probation report filed for the sentencing hearing presented details regarding the crimes and the victims.[3] On December 11, 2017, the trial court suspended imposition of a sentence and placed defendant on three years of formal probation. The court ordered, as a term of probation, that defendant pay restitution to several victims, including Nicole W. and John H., in amounts to be determined by the court.

In September and October 2023, the trial court held restitution hearings. The People requested $1464 for victim Nicole W. and $1000 for victim John H., as well as $208.47 for victim Elmor E. and $21,092 for victim Alma C. The People presented exhibits to support the requests. Defendant did not object to the court's jurisdiction to set the amounts of restitution, and indicated she would remain on probation until December 2023. The trial court ordered defendant to pay the requested amounts of restitution only as

---

[2] In the same plea form, defendant also admitted to probation violations in three other cases.

[3] A detailed summary of the underlying offenses is unnecessary to resolve the issues on appeal. But, in short, the probation report indicates defendant was found with the personal identifying information of various people, a number of whom indicated someone had opened or applied for lines of credit, cashed checks, purchased vehicles, etc., in their names.

2

to Nicole W. and John H.  Defendant filed this appeal challenging the restitution awards.

DISCUSSION

## A.  Jurisdiction

Relying on section 1203.3, defendant contends the trial court had no jurisdiction to make the restitution awards for the two victims because it did so after her probation period expired.  She also argues that section 1202.46 did not extend the court's jurisdiction to make the awards because the victims' losses were known for six years before the restitution amounts were set.  We examine these claims below.

### 1. Legal Principles

Article I, section 28, subdivision (b)(13), of the California Constitution establishes that victims have a right "to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer" and that restitution shall be ordered from every convicted wrongdoer when a victim suffers a loss, "regardless of the sentence or disposition imposed." Section 1202.4 implements this constitutional provision (*People v. Smith* (2011) 198 Cal.App.4th 415, 431), declaring:  "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime."  (§ 1202.4, subd. (a)(1).)

Section 1202.4, subdivision (a)(3), provides that courts must order victim restitution in accordance with subdivision (f) of section 1202.4, which states:  "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any

3

other showing to the court. *If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court.* The court shall order full restitution." (Italics added.)

Section 1203.3, subdivision (a) provides, in relevant part: "The court has the authority *at any time during the term of probation* to revoke, modify, or change its order of suspension of imposition or execution of sentence." (Italics added.) It also provides: "This section does not prohibit the court from modifying the dollar amount of a restitution order pursuant to subdivision (f) of Section 1202.4 at any time during the term of the probation." (§ 1203.3, subd. (b)(5).)

Section 1202.46 provides: "*when the economic losses of a victim cannot be ascertained at the time of sentencing* pursuant to subdivision (f) of Section 1202.4, *the court shall retain jurisdiction over a person subject to a restitution order for purposes of imposing or modifying restitution until such time as the losses may be determined.* This section does not prohibit a victim, the district attorney, or a court on its own motion from requesting correction, *at any time*, of a sentence when the sentence is invalid due to the omission of a restitution order or fine pursuant to Section 1202.4." (Italics added.)

In reviewing these statutory provisions, the California Supreme Court held that "section 1203.3 does not set a strict statutory deadline for specifying the amount of victim restitution," and that sentencing courts in probation cases retain jurisdiction pursuant to section 1202.46 to fix the amount of victim restitution until the amount of the victim's losses can be determined, even after the term of probation has terminated. (*People v. McCune* (2024) 16 Cal.5th 980, 991–996, 1000 (*McCune*).) Importantly, however, the high court made clear its holding "does not mean that there are no timing limitations at

4

all." (*Id*. at pp. 1000–1001.) As the court emphasized, "The statutory framework permits a trial court to retain jurisdiction to fix the restitution amount *only if losses 'cannot be ascertained at the time of sentencing,' and only 'until such time as the losses may be determined.'* (§ 1202.46.)" (*McCune*, at p. 1001, italics added.)

### 2. *Analysis*

As indicated, defendant contends that, under section 1203.3, the trial court's authority to set restitution amounts is limited to the probationary period, and that here, section 1202.46 did not extend the court's jurisdiction to make the awards to John H. and Nicole W. because their losses were ascertainable long before her probation term ended. (See *McCune*, *supra*, 16 Cal.5th at p. 1001.) Though we might agree that the losses of Nicole W. and John H. appeared to have been ascertainable long before the restitution hearing in 2023, that circumstance is not dispositive here.

As defendant acknowledges, section 1203.3, subdivision (a), authorizes a trial court to set a restitution amount "at any time during the term of probation." Here, the record indicates the restitution amount was set while defendant was still on probation. As the People point out, in the transcript of one of the 2023 restitution hearings, defense counsel informed the court that, due to tolling, defendant remained on probation until December 2023:

"THE COURT: This is a 2017 sentencing. Why are we talking about restitution orders in 2023? Is she even still on probation?

"[Defense counsel]: She is because I think her probation was tolled.

"THE COURT: She had a number of violations of probation, I recognize that.

"[Defense counsel]: And I think her probation now expires the end of this year, December 22nd [2023]."

Defendant's only response to the foregoing is a single sentence in her opening brief—later repeated in her reply brief—where she asserts: "Statements made by defense counsel expressing a belief of possible tolling were never verified and the record fails to reflect any such tolling." This, however, misapprehends established principles of appellate review. It is well settled that " '[a] judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, italics omitted.) "The party appealing has the burden of overcoming the presumption of correctness. For this purpose, [the appellant] must provide an adequate appellate record demonstrating the alleged error. Failure to provide an adequate record on an issue requires that the issue be resolved against the appellant." (*Defend Bayview Hunters Point Com. v. City and County of San Francisco* (2008) 167 Cal.App.4th 846, 859–860.)

Apart from defense counsel's representation to the trial court, the record is otherwise silent as to whether defendant was still on probation at the time of the 2023 restitution hearings. Defendant said nothing when her counsel told the court she was on probation until December 22, and on appeal defendant identifies no evidence in the record and presents no argument demonstrating the impossibility of her being on probation at the time of the hearings.[4] Consequently, defendant has not overcome the presumption that

---

[4] There is authority indicating it was not an impossibility. In *People v. Leiva* (2013) 56 Cal.4th 498, for example, the high court explained that "a trial court can find a violation of probation and then reinstate *and extend the terms of probation* 'if, and only if, probation is reinstated based upon a violation that occurred during the unextended period of probation.' [Citation.] This result fairly gives the defendant, if he prevails at the formal violation hearing, the benefit of the finding that there was no violation of

6

the trial court acted appropriately within the framework of section 1203.3 to set the amount of victim restitution, regardless of section 1202.46.

In sum, we reject defendant's jurisdictional challenge to the award of restitution.

## B. The Restitution Amounts

Defendant next contends the trial court abused its discretion and violated her due process rights because there was no factual or rational basis supporting the restitution awards.

First, defendant points out that John. H. simply said, years after the crime, that he lost wages while having to speak with multiple creditors and banks. But, defendant complains, John H. provided no documentation, sworn declaration, or other evidence justifying how he spent his time, or supporting the reasonableness of his claimed rate of $50 per hour.

Second, defendant contends probation did not timely investigate Nicole W.'s restitution claim and did not obtain her sworn declaration. Though defendant acknowledges that Nicole W. "produced credible documentation

---

probation during the probationary period. [¶] On the other hand, *if the prosecution, at the formal violation hearing held after probation normally would have expired, is able to prove that the defendant did violate probation before the expiration of the probationary period, a new term of probation may be imposed by virtue of section 1203.2, subdivision (e), and section 1203.3.*" (*Leiva*, at p. 516, fn. omitted, italics added; see § 1203.2, subd. (e) ["If an order setting aside the judgment, the revocation of probation, or both is made after the expiration of the probationary period, the court may again place the person on probation for that period and with those terms and conditions as it could have done immediately following conviction."]; see also *People v. Ornelas* (2023) 87 Cal.App.5th 1305, 1311–1313 [a court reinstating probation after a summary revocation may extend the date of the termination of probation 129 days without increasing the probation term beyond the statutory two-year maximum period because the defendant absconded from probation supervision for 129 days].)

that three checks totaling $929 were dishonored," she contends the papers also disclose Nicole W. had "consumer rights" to request a refund for losses suffered, and there is no way to know if she exercised these rights and was already compensated. And while there is evidence Nicole W. disputed and "succeeded in getting changed to 'disputed' " a line of credit taken out in her name, defendant asserts that "[n]othing in these documents relates to actual financial loss in any amount." As for Nicole W.'s handwritten ledger showing her total losses amounted to $1,464, defendant argues the document "reveal[s] no useful insight into any actual out of pocket loss" and is not credible evidence of loss. None of defendant's contentions is persuasive.

Again, subdivision (f) of section 1202.4 states: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, *based on the amount of loss claimed by the victim or victims or any other showing to the court*." (Italics added.) Subdivision (f)(3) of section 1202.4 requires, to the extent possible, that restitution be ordered in "a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct," including the value of stolen or damaged property, lost wages, and "[e]xpenses for a period of time reasonably necessary to make the victim whole, for the costs to monitor the credit report of, and for the costs to repair the credit of, a victim of identity theft, as defined in Section 530.5." (§ 1202.4, subd. (f)(3)(A), (D), (L).)

It bears emphasizing that section 1202.4 "does not, by its terms, require any particular kind of proof." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542–1543 (*Gemelli*).) The weight of authority holds that "[a] victim's statement of economic loss is prima facie evidence of loss." (See

8

*People v. Grandpierre* (2021) 66 Cal.App.5th 111, 115 (*Grandpierre*); *People v. Weatherton* (2015) 238 Cal.App.4th 676, 684 (*Weatherton*); *Gemelli*, at pp. 1542–1543; *People v. Pinedo* (1998) 60 Cal.App.4th 1403, 1406–1407 (*Pinedo*).)  "Restitution hearings are intended to be informal" (*Weatherton*, at p. 684), and a victim's claim need not be substantiated through particular testimonial evidence or documentation (*In re S.S.* (1995) 37 Cal.App.4th 543, 547, fn. 2 (*S.S.*)).

In this regard, a trial court is entitled to accept as prima facie evidence of loss a property owner's statement made in a probation report about the value of stolen or damaged property.  (*Weatherton, supra*, 238 Cal.App.4th at p. 684.)  Courts have also accepted a victim's unsworn written itemization of losses as prima facie evidence of the loss.  (E.g., *S.S., supra*, 37 Cal.App.4th at pp. 545, 548, fns. 1–2 [noting no apparent authority requiring a victim to "supply a sworn proof of loss or detailed documentation of costs and expenses"]; *Gemelli, supra*, 161 Cal.App.4th at pp. 1544–1545.)  To rebut a prima facie case, the defendant must offer contrary information showing "the amount claimed is excessive." (*Weatherton,* at p. 684; *Pinedo, supra*, 60 Cal.App.4th at pp. 1406–1407 [probation report requested restitution award of $7,000 to cover attorney fees "and it was up to appellant to demonstrate this amount was unreasonable"].)

"The standard of proof at a restitution hearing is preponderance of the evidence," and a victim restitution order is generally reviewed for abuse of discretion.  (*Grandpierre, supra*, 66 Cal.App.5th at p. 115.)  "When . . . the gist of the appellant's argument is that the evidence before the trial court was insufficient to establish the amount awarded, we review for substantial evidence." (*In re Travis J.* (2013) 222 Cal.App.4th 187, 203.)

9

Here, the trial court admitted into evidence documents from the probation department indicating the probation officers confirmed the requested restitution amounts in conversations with each victim. John H. stated he was unable to provide documentation, but he verbally reported his losses. Beyond verbally communicating her losses, Nicole W. provided supporting documentation, including copies of three checks that her bank returned for being "Altered/Fictitious," and what appears to be a handwritten ledger of her losses. Additionally, an earlier 2017 probation report identified both Nicole W. and John H. as victims and contained statements concerning their losses that were consistent with the statements they made in 2023. As recounted above, case law recognizes that these communications sufficed as prima facie evidence of the claimed losses and that additional documentation and sworn statements were not required to further substantiate the losses.

In arguing to the contrary, defendant relies on *People v. Vournazos* (1988) 198 Cal.App.3d 948 (*Vournazos*). There, the Court of Appeal found a restitution order was unsupported by substantial evidence, stating: "[In] ordering defendant to pay [$2,180] in restitution, the trial court relied entirely on the recommendation of defendant's probation officer who, in turn, derived the figure solely from [the victim's] statement of loss and his discussions with [the victim]. Neither the statement nor the testimony of the probation officer established that the sum claimed by [the victim] for loss of property was based on the replacement cost of the property. Further, there was no evidence that the sum of $300 claimed for repair of damage to the [stolen car] represented the actual cost of the repair. While a defendant bears the burden of proving that the amount of restitution claimed by the victim exceeds repair or replacement cost of lost or damaged property (*People v. Hartley* [(1980)] 163 Cal.App.3d 126, 130 (*Hartley*)), defendant here was

10

not required to meet that burden inasmuch as the replacement or repair cost of [the victim's] property was not established." (*Vournazos*, at pp. 958–959.) We find defendant's reliance on *Vournazos* unavailing.

In particular, the analysis in *Vournazos* has been repeatedly criticized. (E.g., *Gemelli*, *supra*, 161 Cal.App.4th at pp. 1542–1543; *S.S.*, *supra*, 37 Cal.App.4th at pp. 546–547; *People v. Foster* (1993) 14 Cal.App.4th 939, 945–946, superseded by statute on other grounds as stated in *People v. Sexton* (1995) 33 Cal.App.4th 64, 69–71; cf. *People v. Pittman* (2024) 99 Cal.App.5th 1252, 1259–1260 [referring to the approach in *People v. Harvest* (2000) 84 Cal.App.4th 641, and the similar approach in *Vournazos*, as "unduly restrictive" and also referring to the "approach taken in the *Foster* line of cases" as stating "the majority view"].)  In *S.S.*, a different division of this court criticized *Vournazos'* professed reliance on *People v. Hartley*, *supra*, 163 Cal.App.3d 126, because *Hartley* actually held that a probation report alone could establish the amount of a victim's losses, and that a defendant has the burden of refuting statements in a probation report.  (*S.S.*, at p. 546; see *Hartley*, at p. 130 & fn. 3.)

Defendant fails to acknowledge the line of cases holding that "[a] victim's statement of economic loss is prima facie evidence of loss" (see *Grandpierre*, *supra*, 66 Cal.App.5th at p. 115), much less explain why the approach in *Vournazos* is correct despite overwhelming criticism.  As defendant provides no argument addressing the weight of authority on the topic, we see no reason to adopt the approach in *Vournazos*.

In sum, we reject defendant's challenge to the court-ordered restitution amounts.

11

## C. Equity

Defendant argues that principles of equity and the doctrine of equitable estoppel barred the restitution order because the People engaged in unjustified delay for years. That is, the People should be "estopped by acquiescence in seeking such belated restitution orders" and the delay violated defendant's right to a fair hearing because "memories would have dimmed and/or documentation might have been mislaid or destroyed." We reject this.

Generally, "issues not raised in the trial court cannot be raised for the first time on appeal." (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603.) Here, defendant never raised these claims in the trial court. Defendant never objected to the requested amounts of restitution on grounds of equity or estoppel; nor did she assert that her right to a fair hearing was undermined because of faded memories or lost documentation. Moreover, defendant cites no authority indicating the propriety of relying on "equity" to reverse restitution awards, and she omits to explain what circumstances should be considered in balancing the equities here (see *Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1133–1134).

Finally, defendant's citation to case law setting out the doctrine of equitable estoppel (e.g., *Schafer v. City of Los Angeles* (2015) 237 Cal.App.4th 1250) fares no better. The equitable estoppel doctrine requires a moving party to show they suffered injury in reliance on the conduct of the party to be estopped. (*Id.* at p. 1261.) But the record reflects that defendant knew, as early as 2017 when the trial court first ordered payment of victim restitution in an amount to be determined, that John H. and Nicole W. were identified as victims of her identity theft. Moreover, defendant offers no record citations or persuasive argument indicating that the relatively modest restitution

awards here—to which the two victims indisputably had a right under article I, section 28, subdivision (b)(13), of the California Constitution—caused any particular injury or injustice to her.

In sum, we reject defendant's claims seeking relief on grounds of equity or estoppel or the right to a fair hearing.

**DISPOSITION**

The judgment is affirmed.

_____
Fujisaki, Acting P. J.

WE CONCUR:

_____
Petrou, J.

_____
Rodríguez, J.

*People v. Adams* (A169169)

13